(including amortization of discount), in each case on a consolidated basis, all as determined in conformity with Agreement Accounting Principles.

"**Net Income**" means, for any period, the net earnings (or loss) after taxes of PTC and its Domestic Subsidiaries on a consolidated basis for such period taken as a single accounting period determined in conformity with Agreement Accounting Principles; provided, that when calculating Net Income the following items shall be excluded from such calculation: (i) the earnings (but not loss) of any Person that is not a Subsidiary or that is accounted for by the equity investment method of accounting, except to the extent of the amount of dividends or distributions paid in cash to a Borrower; (ii) the earnings of a Domestic Subsidiary to the extent that the declaration or payment of dividends or similar distributions by such Domestic Subsidiary to a Borrower with respect to such earnings is not, at the date of determination, permitted without the prior approval of a Governmental Authority (and such approval has not been obtained), or is prohibited, directly or indirectly, by operation of the terms of its charter or any agreement, instrument, judgment, decree, order, statute, rule or governmental regulation applicable to such Domestic Subsidiary or the holders of its Capital Stock, (iii) the cumulative effect of a change in accounting principles and (iv) nonrecurring items, such as gains or losses on the sale of assets; but when calculating Net Income such calculation shall include historical audited Net Income (as calculated above) for such period of any Person (or division of such Person) that became a Domestic Subsidiary of PTC during such period or was merged into or was consolidated with PTC or any of its Domestic Subsidiaries during such period, or where the assets of such Person (or division of such Person) were acquired by a Borrower or any of its Domestic Subsidiaries during such period, whether accrued prior or subsequent to the date of such acquisition, merger or consolidation.

(B)     Minimum EBITDA.  The Borrowers shall not permit cumulative EBITDA for the period from October 1, 2009 through the last day of any month set forth below, to be less than the amount set forth below opposite such date.

| Date | Cumulative EBITDA |
| --- | --- |
| October 31, 2009 | $0 |
| November 30, 2009 | $250,000 |
| December 31, 2009 | $650,000 |

(C)     Capital Expenditures.  The Borrowers shall not expend or commit to expend for Capital Expenditures, in the aggregate for the Borrowers, in excess of (i) for the 13-week period beginning on the date of entry of the Interim Order, $1,300,000, and (ii) for each successive rolling 13-week period, the sum of (a) the amount provided for Capital Expenditures in the Approved Budget on the first day of such period, plus (b) 15% of such amount.

(D)     Cash Covenants.

(i)     The Borrowers shall not permit the Revolving Credit Obligations, less actual ending cash, tested as of the last Business Day of each week, to be more than the amount set forth for such date in the Approved Budget, plus $2,000,000.

(ii)     The Borrowers shall not permit their cash and Cash Equivalents (net of amounts held against uncleared drafts and ACH payments) to exceed $5,000,000 in the aggregate at any time that any Revolving Loans are outstanding.

## ARTICLE VIII: DEFAULTS

8.1     Defaults.  Each of the following occurrences shall constitute a Default under this Agreement:

(a)     Failure to Make Payments When Due.  The Borrowers shall (i) fail to pay when due any of the Obligations consisting of principal with respect to the Loans or (ii) shall fail to pay within three (3) Business Days of the date when due any of the other Obligations (including, without limitation, any interest payment) under this Agreement or the other Loan Documents.

(b)     Breach of Certain Covenants.  Any of the Borrowers shall fail duly and punctually to perform or observe any agreement, covenant or obligation binding on the Borrowers under:

(1)     Sections 7.2(B), (C), (D), (F) through (J), (O) or (R) and such failure shall continue unremedied for five (5) Business Days;

(ii)     Section 7.2(S) and such failure shall continue unremedied for one (1) Business Day; or

(iii)     Section 7.1, 7.2 (other than the subsections identified in clause (i) above), 7.3 or 7.4.

(iii)     Breach of Representation or Warranty.  Any representation or warranty made or deemed made by any of the Borrowers herein or in any of the other Loan Documents or in any statement or certificate at any time pursuant to any of the Loan Documents shall be false or misleading in any material respect on the date as of which made (or deemed made).

(a)     Other Defaults.  Any of the Borrowers shall default in the performance of or compliance with any term contained in this Agreement (other than as covered by paragraphs (a), (b) or (c) of this Section 8.1), or any of the Borrowers shall default in the performance of or compliance with any term contained in any of the other Loan Documents or any of the Orders, and such default shall continue for fifteen (15) days after the earlier of (i) notice from the

Administrative Agent or any Lender or (ii) the date on which any member of the Management Group shall first have actual knowledge thereof or should have had knowledge thereof.

(b)  *Default as to Other Indebtedness.*  Any Borrower shall fail to make any payment when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise) with respect to any Indebtedness (other than the Obligations or the Pre-Petition Obligations) the aggregate outstanding principal amount of which Indebtedness is in excess of $1,000,000; or any breach, default or event of default shall occur, or any other condition shall exist under any instrument, agreement or indenture pertaining to any such Indebtedness, if the effect thereof is to cause an acceleration, mandatory redemption, a requirement that a Borrower offer to purchase such Indebtedness or other required repurchase of such Indebtedness, or permit the holder(s) of such Indebtedness to accelerate the maturity of any such Indebtedness or require a redemption or other repurchase of such Indebtedness; or any such Indebtedness shall be otherwise declared to be due and payable (by acceleration or otherwise) or required to be prepaid, redeemed or otherwise repurchased by any Borrower (other than by a regularly scheduled required prepayment) prior to the stated maturity thereof.

(c)  *Dismissal or Conversion of Cases, etc.*  The Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or any of the Borrowers shall file a motion or other pleading seeking the dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise; a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed in the Cases and the order appointing such trustee, responsible officer or examiner shall not be reversed or vacated within thirty (30) days after the entry thereof; any Borrower's board of directors, managers, or sole member, as the case may be, shall authorize a liquidation of its business; or an application shall be filed by any Borrower for the approval of any other super-priority claim (other than the Carve-Out) in the Cases which is pari passu with or senior to the claims of the Administrative Agent and the Lenders against such Borrower hereunder, or there shall arise or be granted any such pari passu or senior super-priority claim.

(d)  *Relief From Automatic Stay.*  The Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Borrower which have a value in excess of $500,000 in the aggregate.

(e)  *Modification of Orders.*  An order of the Bankruptcy Court shall be entered reversing, staying, vacating or (without the written consent of the Administrative Agent) otherwise amending, supplementing or modifying any of the Orders or terminating the use of cash collateral by the Borrowers pursuant to the Orders.

(f)     Other Claims.  An order of the Bankruptcy Court shall be entered allowing any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Administrative Agent, any Lender or any of the Collateral.

(g)     Payment Pleadings and Orders.   Any Borrower shall file a motion (which is not withdrawn within three (3) Business Days) seeking, or the Bankruptcy Court shall enter, an order approving payment of any pre-petition claim other than as provided for in a First Day Order or an Order as otherwise consented to by the Administrative Agent.

(h)     Plan of Reorganization.

(i)     Any plan of reorganization in the Cases that the Administrative Agent or the Required Lenders rejects, is confirmed by the Bankruptcy Court; or

(ii)     A plan of reorganization is filed by any party-in-interest or a motion for the sale of substantially all the assets of any Borrower is filed which does not contemplate indefeasible payment in full in cash of the Obligations on the effective date of any such plan of reorganization or upon the closing of such sale.

(i)     Failure to Support Claims.   Any Borrower or any of their Subsidiaries shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Borrowers or any of their Subsidiaries) any other Person's opposition of any motion made in the Bankruptcy Court by the Administrative Agent or the Lenders seeking confirmation of the amount of the Administrative Agent's or Lenders' claim or the validity and enforceability of the Liens in favor of the Administrative Agent for the benefit of the Secured Parties; or the Borrowers or any of their Subsidiaries shall seek to, or shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Borrowers or any of their Subsidiaries) any other Person's motion to, disallow in whole or in part the Administrative Agent's or Lenders' claim in respect of the Obligations or to challenge the validity and enforceability of the Liens in favor of the Administrative Agent for the benefit of the Secured Parties.

(j)     Cash Collateral.   Without the consent of the Pre-Petition Creditors, the Pre-Petition Creditors' cash collateral shall be used in a manner inconsistent with the Orders; or an order of a court of competent jurisdiction authorizes the use of cash collateral without the written consent of Administrative Agent; or an order of a court of competent jurisdiction shall be entered terminating any Borrower's use of the Pre-Petition Creditors' cash collateral.

(k)     Judgments and Attachments.   Any money judgment(s) (other than a money judgment covered by insurance as to which the insurance company has not disclaimed or reserved the right to disclaim coverage), writ or warrant of attachment, or similar process (in the case of the Borrowers, as to any post-petition liability or any pre-petition liability than is not

subject to the stay in the Cases) against any Borrower or any of the Foreign Subsidiaries or any of their respective assets involving in any single case or in the aggregate an amount in excess of $1,000,000 is or are entered and shall remain undischarged, unvacated, unbonded or unstayed for a period of thirty (30) days or in any event later than fifteen (15) days prior to the date of any proposed sale thereunder.

(l)     Dissolution.  Any order, judgment or decree shall be entered against any Borrower decreeing its involuntary dissolution or split up and such order shall remain undischarged and unstayed for a period in excess of sixty (60) days; or any Borrower shall otherwise dissolve or cease to exist except as specifically permitted by this Agreement.

(m)     Loan Documents; Failure of Security.  At any time, for any reason, (i) any provisions of any Loan Document that materially affects the ability of the Administrative Agent, or any of the Lenders to enforce the Obligations or enforce their rights against the Collateral ceases to be in full force and effect or any Borrower seeks to repudiate its obligations thereunder and the Liens intended to be created thereby are, or any Borrower seeks to render such Liens, invalid or unperfected, or (ii) any Lien on Collateral in favor of the Administrative Agent contemplated by the Loan Documents or the Orders shall, at any time, for any reason, be invalidated or otherwise cease to be in full force and effect, or such Lien shall not have the priority contemplated by this Agreement or the Loan Documents or the Orders.

(n)     Termination Event.   Any Termination Event occurs which could reasonably be expected to subject any Borrower or any Controlled Group member to liability individually or in the aggregate in excess of $1,000,000.

(o)     Waiver of Minimum Funding Standard.  The plan administrator of any Plan applies under Section 412(c) of the Code for a waiver of the minimum funding standards of Section 412(a) of the Code and the substantial business hardship upon which the application for the waiver is based could reasonably be expected to subject either a Borrower or any Controlled Group member to liability individually or in the aggregate in excess of $500,000.

(p)     Change of Control.  A Change of Control shall occur.

(q)     Environmental Matters.  Any Borrower or any of its Subsidiaries (other than Wiederholt or the Foreign Subsidiaries) shall be the subject of any proceeding or investigation pertaining to (i) the Release by such Borrower or any such Subsidiary of any Contaminant into the environment, (ii) the liability of the Borrower or any such Subsidiaries arising from the Release by any other Person of any Contaminant into the environment, or (iii) any violation of any Environmental, Health or Safety Requirements of Law by such Borrower or any such Subsidiaries, which, in any case, has subjected or is reasonably likely to subject such Borrower to liability individually or in the aggregate in excess of $1,000,000.

(r)     Final Order.  The Final Order Entry Date shall not have occurred by the date that is thirty (30) days following the date of entry of the Interim Order (or such later date as the Administrative Agent may agree in its sole discretion).

(s)     Compliance with Orders.  Any Borrower shall fail to comply with any provision of the Interim Order or the Final Order.

(t)     Budget Approval.  The Borrowers shall fail to provide a Proposed Budget that is acceptable to the Administrative Agent, in its reasonable discretion, as contemplated by Section 7.1(A)(viii)(1) hereof, within seven (7) days of the initial delivery to the Administrative Agent of such Proposed Budget.

(u)     Sale Order.  The Bankruptcy Court shall approve a Sale that does not provide for sufficient funds to pay the Obligations in full in cash on the date of the consummation of such Sale.

(v)     Sale Process.  Any of the following Sale milestones shall fail to occur on or before the dates identified below:

(i)     on or before the fourteenth (14th) day following the Filing Date, the Borrowers shall obtain entry of the Bid Procedure Order by the Bankruptcy Court, which order shall authorize (1) credit bids and (2) the solicitation of bids for the Sale of the Borrowers collectively;

(ii)     on or before seventh (7th) day following the Bid Deadline, the Borrowers shall conduct the Auction;

(iii)     on or before the sixtieth (60th) day following the Filing Date, the Borrowers shall obtain entry of the Sale Order by the Bankruptcy Court;

(iv)     on or before thirteenth (13th) day following the Sale Date, the Borrowers shall close the Sale, unless the Borrowers are seeking approval from the Bankruptcy Court pursuant to Section 8.2(g) of the Stalking Horse Purchase Agreement to reject the "Collective Bargaining Agreements" listed on Schedule 5.9(a)(i) to the Stalking Horse Purchase Agreement, in which case the Sale shall be consummated as promptly as practicable after the Sale Date; and

(v)     the Sale shall have occurred within one hundred (100) days after the Filing Date.

A Default shall be deemed "continuing" until cured or until waived in writing in accordance with Section 9.3.

## ARTICLE IX:  REMEDIES, DEFAULTING LENDERS;  WAIVERS AND AMENDMENTS

9.1     Remedies Upon Default.  At any time after the occurrence and during the continuance of a Default, and without further order of or application to the Bankruptcy Court, the Administrative Agent may, and at the request of the Required Lenders, shall, by notice to the Borrower Representative (with a copy to counsel for the Committee appointed in the Cases, and to the United States Trustee), take one or more of the following actions, at the same or different times (provided, that with respect to clause (iv) below and the enforcement of Liens or other remedies with respect to the Collateral of any Borrower under clause (i) below, the Administrative Agent shall provide the Borrower Representative (with a copy to counsel for the Committee in the Cases, and to the United States Trustee) with five (5) Business Days' written notice prior to taking the action contemplated thereby and provided, further, that upon receipt of notice referred to in the immediately preceding clause with respect to the accounts referred to in clause (iii) below, the Borrowers may continue to make ordinary course disbursements from such accounts, including but not limited to payment of allowed and unpaid professional fees and disbursements of the Borrowers' and any Committees' professionals (not to exceed the amounts provided therefor in the Approved Budget through the date of such Default or Unmatured Default) incurred prior to such Default or Unmatured Default which have not yet been paid shall be permitted (without application of any retainers held by such professionals), as the same may be due and payable, but may not withdraw or disburse any other amounts from such accounts; in any hearing after the giving of the aforementioned notice, the only issue that may be raised by any party in opposition thereto being whether, in fact, a Default has occurred and is continuing): (i) terminate forthwith the Revolving Loan Commitment; (ii) declare the Loans then outstanding to be forthwith due and payable, whereupon the principal of the Loans together with accrued interest thereon and any unpaid accrued fees and all other liabilities of the Borrowers accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrowers; (iii) set off amounts in any other accounts maintained with the Administrative Agent and apply such amounts to the obligations of the Borrowers hereunder and in the other Loan Documents; and (iv) exercise any and all remedies under the Loan Documents and under applicable law available to the Administrative Agent and the Lenders. Notwithstanding the forgoing, the Carve-Out must be paid in full prior to application of proceeds by any of the Lenders in connection with exercising their rights of collection with respect to the Collateral.

9.2     Defaulting Lender.  Notwithstanding any provision of this Agreement to the contrary, if any Lender becomes a Defaulting Lender, then the following provisions shall apply for so long as such Lender is a Defaulting Lender.

(A)     fees shall cease to accrue on the unfunded portion of the Revolving Loan Commitment of such Defaulting Lender pursuant to Section 2.13(C)(i), and such Lender shall cease to be entitled to the fees provided for in Sections 2.13(C)(iii) and (iv);

(B)     the Revolving Loan Commitment and Revolving Loans of such Defaulting Lender shall not be included in determining whether all Lenders or the Required Lenders have taken or may take any action hereunder (including any consent to any amendment or waiver pursuant to Section 9.3), provided that any waiver, amendment or modification requiring the consent of all Lenders or each affected Lender which affects such Defaulting Lender differently than other affected Lenders shall require the consent of such Defaulting Lender; and

(C)     any amount payable to such Defaulting Lender hereunder (whether on account of principal, interest, fees or otherwise and including any amount that would otherwise be payable to such Defaulting Lender pursuant to Section 12.3) shall, in lieu of being distributed to such Defaulting Lender, be retained by the Administrative Agent in a segregated account and, subject to any applicable requirements of law, be applied at such time or times as may be determined by the Administrative Agent (i) first, to the payment of any amounts owing by such Defaulting Lender to the Administrative Agent hereunder, (ii) second, to the funding of any Revolving Loan in respect of which such Defaulting Lender has failed to fund its portion thereof as required by this Agreement, as determined by the Administrative Agent, (iii) third, if so determined by the Administrative Agent and the Borrower Representative, held in such account as cash collateral for future funding obligations of the Defaulting Lender of any Revolving Loans under this Agreement, (iv) fourth, to the payment of any amounts owing to the Lenders as a result of any judgment of a court of competent jurisdiction obtained by any Lender against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement, (v) fifth, to the payment of any amounts owing to the Borrowers as a result of any judgment of a court of competent jurisdiction obtained by the Borrowers against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement, and (vi) sixth, to such Defaulting Lender or as otherwise directed by a court of competent jurisdiction; provided that if such payment is (x) a prepayment of the principal amount of any Revolving Loans and (y) made at a time when the conditions set forth in Article V are satisfied, such payment shall be applied solely to prepay the Revolving Loans of all non-Defaulting Lenders pro rata prior to being applied to the prepayment of any Revolving Loans owed to any Defaulting Lender.

9.3     Amendments.

(A)     Subject to the provisions of this Article IX, the Required Lenders (or the Administrative Agent with the consent in writing of the Required Lenders) and the Borrowers may enter into agreements supplemental hereto for the purpose of adding or modifying any provisions to the Loan Documents or changing in any manner the rights of the Lenders or the Borrowers hereunder or waiving any Default hereunder; provided, however, that no such supplemental agreement shall, without the consent of each Lender affected thereby:

(i)      Postpone or extend the Termination Date or any other date fixed for any payment of principal of, or interest on, the Loans or any fees or other amounts payable to such Lender.

(ii)      Reduce the principal amount of any Loans or the rate of interest thereon or any fees or other amounts payable to such Lender, provided that the Required Lenders may waive the application of the default rate of interest pursuant to Section 2.10.

(iii)      Reduce the percentage specified in the definition of "Required Lenders" or any other percentage of Lenders specified to be the applicable percentage in this Agreement to act on specified matters, or amend the definitions of "Pro Rata Share".

(iv)      Increase the amount of any Revolving Loan Commitment of any Lender hereunder or the amount of the aggregate Revolving Loan Commitments of the Lenders hereunder.

(v)      Permit any Borrower to assign its rights under this Agreement.

(vi)      Increase any of the percentages specified in the definition of "Borrowing Base".

(vii)      Amend this Section 9.3.

(viii)      Other than in connection with a transaction permitted pursuant to the terms of Section 7.3(B), release all or substantially all of the Collateral.

(ix)      Amend Section 9.2.

No amendment of any provision of this Agreement relating to the Administrative Agent shall be effective without the written consent of the Administrative Agent. The Administrative Agent may waive payment of the fee required under Section 13.3(B) without obtaining the consent of any of the Lenders.

(B)      If, in connection with any proposed amendment, modification, waiver or termination requiring the consent of the Required Lenders, the consent of more than 50% of the Lenders is obtained but the consent of other Lenders whose consent is required is not obtained (any such Lender whose consent is not obtained as described in this Section 9.3(B) being referred to as a "Non-Consenting Lender"), then, as long as the Lender acting as the Administrative Agent (or whose Affiliate is acting as Administrative Agent) is not a Non-

Consenting Lender, at the Administrative Agent's request, any one or more eligible assignees acceptable to the Administrative Agent shall have the right with the Administrative Agent's consent and in the Administrative Agent's sole discretion (but shall have no obligation) to purchase from the Non-Consenting Lenders, and such Non-Consenting Lenders agree that they shall, upon the Administrative Agent's request, sell and assign to the Lender acting as the Administrative Agent (or whose Affiliate is acting as Administrative Agent) or such eligible assignee, all, but not less than all, of the Revolving Credit Commitments and Loans of each of the Non-Consenting Lenders for an amount to be agreed but not to exceed, with respect to each Non-Consenting Lender, the principal balance of all Loans held by such Non-Consenting Lender and all accrued and unpaid interest and fees with respect thereto through the date of sale; provided, however, that such purchase and sale shall not be effective with respect to any Non-Consenting Lender until (x) the Administrative Agent shall have received from such eligible assignee an agreement in form and substance reasonably satisfactory to the Administrative Agent whereby such eligible assignee shall agree to be bound by the terms hereof and (y) such Non-Consenting Lender shall have received payments of all Loans held by it and all accrued and unpaid interest and fees with respect thereto through the date of the sale. Each Lender agrees that, if it becomes a Non-Consenting Lender, it shall execute and deliver to the Administrative Agent an Assignment and Acceptance to evidence such sale and purchase and shall deliver to the Administrative Agent any Note or Notes (if the assigning Lender's Loans are evidenced by a Note or Notes) subject to such Assignment and Acceptance; provided, however, that the failure of any Non-Consenting Lender to execute an Assignment and Acceptance shall not render such sale and purchase (and the corresponding assignment) invalid.

9.4 Preservation of Rights. No delay or omission of the Lenders or the Administrative Agent to exercise any right under the Loan Documents shall impair such right or be construed to be a waiver of any Default or an acquiescence therein, and the making of a Loan notwithstanding the existence of a Default or the inability of the Borrowers to satisfy the conditions precedent to such Loan shall not constitute any waiver or acquiescence. Any single or partial exercise of any such right shall not preclude other or further exercise thereof or the exercise of any other right, and no waiver, amendment or other variation of the terms, conditions or provisions of the Loan Documents whatsoever shall be valid unless in writing signed by the Lenders required pursuant to Section 9.3, and then only to the extent in such writing specifically set forth. All remedies contained in the Loan Documents or by law afforded shall be cumulative and all shall be available to the Administrative Agent and the Lenders until the Termination Conditions have been satisfied.

## ARTICLE X: GENERAL PROVISIONS

10.1 Survival of Representations. All representations and warranties of the Borrowers contained in this Agreement and the other Loan Documents shall survive delivery of the Notes and the making of the Loans herein contemplated.

10.2 Governmental Regulation. Anything contained in this Agreement to the contrary notwithstanding, no Lender shall be obligated to extend credit to any Borrower in violation of any limitation or prohibition provided by any applicable statute or regulation.

10.3    Performance of Obligations.  Each Borrower agrees that the Administrative Agent may, but shall have no obligation to (i) at any time, pay or discharge taxes, liens, security interests or other encumbrances levied or placed on or threatened against any Collateral and (ii) after the occurrence and during the continuance of a Default make any other payment or perform any act required of any Borrower under any Loan Document or take any other action which the Administrative Agent in its discretion deems necessary or desirable to protect or preserve the Collateral, including, without limitation, any action to (y) effect any repairs or obtain any insurance called for by the terms of any of the Loan Documents and to pay all or any part of the premiums therefor and the costs thereof and (z) pay any rents payable by any Borrower which are more than thirty (30) days past due, or as to which the landlord has given notice of termination, under any lease, in each case in an aggregate amount not to exceed the aggregate amount of the unused Revolving Loan Commitments.  The Administrative Agent shall use commercially reasonable efforts to give the Borrower Representative notice of any action taken under this Section 10.3 prior to the taking of such action or promptly thereafter provided the failure to give such notice shall not affect the Borrowers' obligations in respect thereof.  The Borrowers jointly agree to pay the Administrative Agent, upon demand, the principal amount of all funds advanced by the Administrative Agent under this Section 10.3, together with interest thereon at the rate from time to time applicable to ABR Loans from the date of such advance until the outstanding principal balance thereof is paid in full.  If the Borrowers fails to make payment in respect of any such advance under this Section 10.3 within one (1) Business Day after the date the Borrower Representative receives written demand therefor from the Administrative Agent, the Administrative Agent shall promptly notify each Lender and each Lender agrees that it shall thereupon make available to the Administrative Agent, in Dollars in immediately available funds, the amount equal to such Lender's Pro Rata Share of such advance.  If such funds are not made available to the Administrative Agent by such Lender within one (1) Business Day after the Administrative Agent's demand therefor, the Administrative Agent will be entitled to recover any such amount from such Lender together with interest thereon at the Federal Funds Effective Rate for each day during the period commencing on the date of such demand and ending on the date such amount is received.  The failure of any Lender to make available to the Administrative Agent its Pro Rata Share of any such unreimbursed advance under this Section 10.3 shall neither relieve any other Lender of its obligation hereunder to make available to the Administrative Agent such other Lender's Pro Rata Share of such advance on the date such payment is to be made nor increase the obligation of any other Lender to make such payment to the Administrative Agent.  All outstanding principal of, and interest on, advances made under this Section 10.3 shall constitute Obligations secured by the Collateral until paid in full by the Borrowers.

10.4    Headings.  Section headings in the Loan Documents are for convenience of reference only, and shall not govern the interpretation of any of the provisions of the Loan Documents.

10.5    Entire Agreement.  The Loan Documents embody the entire agreement and understanding among the Borrowers, the Administrative Agent and the Lenders and supersede all prior agreements and understandings among the Borrowers, the Administrative Agent and the Lenders relating to the subject matter thereof.

10.6    Several Obligations; Benefits of this Agreement. The respective obligations of the Lenders hereunder are several and not joint and no Lender shall be the partner or agent of any other Lender (except to the extent to which the Administrative Agent is authorized to act as such). The failure of any Lender to perform any of its obligations hereunder shall not relieve any other Lender from any of its obligations hereunder. This Agreement shall not be construed so as to confer any right or benefit upon any Person other than the parties to this Agreement and their respective successors and assigns.

10.7    Expenses; Indemnification.

(A)    Expenses. The Borrowers shall reimburse the Administrative Agent for any reasonable costs, internal charges and out-of-pocket expenses (including attorneys' and paralegals' fees and time charges of attorneys and paralegals for the Administrative Agent, which attorneys and paralegals may be employees of the Administrative Agent) paid or incurred by the Administrative Agent in connection with the preparation, negotiation, execution, delivery, arrangement, syndication, funding, review, amendment, waiver, modification, supplement, restructuring, refinancing, "workout," and administration of the Transaction Documents, and the creation and perfection of Liens granted thereunder (including all search expenses, filing fees and taxes). The Borrowers also agree to reimburse the Administrative Agent and the Lenders for any costs, internal charges and out-of-pocket expenses (including attorneys' and paralegals' fees and time charges of attorneys and paralegals for the Administrative Agent and the Lenders, which attorneys and paralegals may be employees of the Administrative Agent or the Lenders) paid or incurred by the Administrative Agent or any Lender in connection with the collection of the Obligations and enforcement (whether by legal proceedings, negotiation or otherwise) of the Loan Documents. In addition to expenses set forth above, the Borrowers agree to reimburse the Administrative Agent, promptly after the Administrative Agent's request therefor, (i) for each audit, collateral analysis, appraisal, field examination, environmental survey, or other business analysis performed by or for the benefit of the Lenders in connection with this Agreement or the other Loan Documents in an amount equal to the Administrative Agent's then customary charges for each person employed to perform such audit, collateral analysis, appraisal, field examination, environmental survey or other business analysis, plus all costs and expenses (including without limitation, travel expenses and attorneys' and paralegals' fees and time charges of attorneys and paralegals for the Administrative Agent, which attorneys and paralegals may be employees of the Administrative Agent) incurred by the Administrative Agent in the performance of such audit, collateral analysis, appraisal, field examination, environmental survey or other business analysis, and (ii) after the occurrence of a Default, for any out-of-pocket expenses for the fees and expenses of a financial advisor or consultant engaged by the Administrative Agent (or its counsel). The Administrative Agent shall provide the Borrower Representative with a detailed statement of all reimbursements requested under this Section 10.7(A).

(B)    Indemnity. The Borrowers further agree to defend, protect, indemnify, and hold harmless the Administrative Agent and each and all of the Lenders and each of their respective Affiliates, and each of such Administrative Agent's, Lender's, or Affiliate's respective officers, directors, employees, attorneys and agents (including, without limitation, those retained in connection with the satisfaction or attempted satisfaction of any of the conditions set forth in Article V) (collectively, the "Indemnitees") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses of any kind or

nature whatsoever (including, without limitation, the fees and disbursements of counsel for such Indemnitees in connection with any investigative, administrative or judicial proceeding, whether or not such Indemnitees shall be designated a party thereto), imposed on, incurred by, or asserted against such Indemnitees in any manner relating to or arising out of:

(i)     this Agreement, the other Transaction Documents or any of the Loan Documents, or any act, event or transaction related or attendant thereto, the making of the Loans, the management of such Loans (including as a result of any dispute between two or more Lenders or between the Lender and the Administrative Agent), the use or intended use of the proceeds of the Loans, or any of the other transactions contemplated by the Loan Documents, including the Transactions; or

(ii)     any liabilities, obligations, responsibilities, losses, damages, personal injury, death, punitive damages, economic damages, consequential damages, treble damages, intentional, willful or wanton injury, damage or threat to the environment, natural resources or public health or welfare, costs and expenses (including, without limitation, attorney, expert and consulting fees and costs of investigation, feasibility or remedial action studies), fines, penalties and monetary sanctions, interest, direct or indirect, known or unknown, absolute or contingent, past, present or future relating to violation of any Environmental, Health or Safety Requirements of Law arising from or in connection with the past, present or future operations of the Borrowers, their Subsidiaries or any of their respective predecessors in interest, or, the past, present or future environmental, health or safety condition of any respective property of the Borrowers or their Subsidiaries, the presence of asbestos containing materials at any respective property of the Borrowers or their Subsidiaries or the Release or threatened Release of any Contaminant into the environment (collectively, the "Indemnified Matters");

provided, however, the Borrowers shall have no obligation to an Indemnitee hereunder with respect to Indemnified Matters caused solely by or resulting solely from the willful misconduct or Gross Negligence of such Indemnitee as determined by the final non-appealed judgment of a court of competent jurisdiction. If the undertaking to indemnify, pay and hold harmless set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, the Borrowers shall contribute the maximum portion which it is permitted to pay and satisfy under applicable law, to the payment and satisfaction of all Indemnified Matters incurred by the Indemnitees.

(C)     Waiver of Certain Claims; Settlement of Claims.  The Borrowers further agree to assert no claim against any of the Indemnitees on any theory of liability for consequential, special, indirect, exemplary or punitive damages.  No settlement shall be entered into by any Borrower with respect to any claim, litigation, arbitration or other proceeding relating to or arising out of the transactions evidenced by this Agreement or the other Loan Documents (whether or not the Administrative Agent or any Lender or any Indemnitee is a party thereto) unless such settlement releases all Indemnitees from any and all liability  with respect thereto.

(D)     Survival of Agreements.     The obligations and agreements of the Borrowers under this Section 10.7 shall survive the termination of this Agreement.

10.8     Numbers of Documents.     All statements, notices, closing documents, and requests hereunder shall be furnished to the Administrative Agent with sufficient counterparts so that the Administrative Agent may furnish one to each of the Lenders.

10.9     Accounting.     Except as provided to the contrary herein, all accounting terms used herein shall be interpreted and all accounting determinations hereunder shall be made in accordance with Agreement Accounting Principles in each case for the Borrowers and any of their respective Subsidiaries on a consolidated basis with Wiederholt and the Foreign Subsidiaries being accounted for on the equity investment method of accounting.

10.10     Severability of Provisions.     Any provision in any Loan Document that is held to be inoperative, unenforceable, or invalid in any jurisdiction shall, as to that jurisdiction, be inoperative, unenforceable, or invalid without affecting the remaining provisions in that jurisdiction or the operation, enforceability, or validity of that provision in any other jurisdiction, and to this end the provisions of all Loan Documents are declared to be severable.

10.11     Nonliability of Lenders.     The relationship between the Borrowers on the one hand and the Lenders and the Administrative Agent on the other hand shall be solely that of borrowers and lenders.     Neither the Administrative Agent nor any Lender shall have any fiduciary responsibilities to any of Borrowers.     Neither the Administrative Agent nor any Lender undertakes any responsibility to any Borrower to review or inform any Borrower of any matter in connection with any phase of a Borrower's business or operations.

10.12     **GOVERNING LAW**.     **THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.**

10.13     CONSENT TO JURISDICTION; SERVICE OF PROCESS; JURY TRIAL.

(A)     CONSENT TO JURISDICTION; SERVICE OF PROCESS.     ALL JUDICIAL PROCEEDINGS BROUGHT BY OR AGAINST THE BORROWERS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY OBLIGATIONS THEREUNDER, SHALL BE BROUGHT IN THE BANKRUPTCY COURT, AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, ANY STATE OR FEDERAL COURT IN THE STATE, COUNTY AND CITY OF NEW YORK.     BY EXECUTING AND DELIVERING THIS AGREEMENT, EACH BORROWER, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY:

(i)     ACCEPTS GENERALLY AND UNCONDITIONALLY THE JURISDICTION AND VENUE OF SUCH COURTS;

(ii)     WAIVES ANY DEFENSE OF FORUM NON CONVENIENS;

(iii)     AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE BORROWER IN ACCORDANCE WITH ARTICLE XIV;

(iv)     AGREES THAT SERVICE AS PROVIDED IN CLAUSE (III) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER IT IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT;

(v)     AGREES THAT THE ADMINISTRATIVE AGENT AND THE LENDERS RETAIN THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO BRING PROCEEDINGS AGAINST ANY LOAN PARTY IN THE COURTS OF ANY OTHER JURISDICTION; AND

(vi)     AGREES THAT THE PROVISIONS OF THIS SECTION 10.13 RELATING TO JURISDICTION AND VENUE SHALL BE BINDING AND ENFORCEABLE TO THE FULLEST EXTENT PERMISSIBLE UNDER NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1402 OR OTHERWISE.

(B)     WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED AMONG THEM IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH.  EACH OF THE PARTIES HERETO AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

(C)     WAIVER OF BOND.  EACH OF THE BORROWERS WAIVES THE POSTING OF ANY BOND OTHERWISE REQUIRED OF ANY PARTY HERETO IN CONNECTION WITH ANY JUDICIAL PROCESS OR PROCEEDING TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS OR TO

ENFORCE ANY JUDGMENT OR OTHER COURT ORDER ENTERED IN FAVOR OF SUCH PARTY, OR TO ENFORCE BY SPECIFIC PERFORMANCE, TEMPORARY RESTRAINING ORDER, PRELIMINARY OR PERMANENT INJUNCTION, THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT.

(D)     ADVICE OF COUNSEL. EACH OF THE PARTIES REPRESENTS TO EACH OTHER PARTY HERETO THAT IT HAS DISCUSSED THIS AGREEMENT AND, SPECIFICALLY, THE PROVISIONS OF THIS SECTION 10.13, WITH ITS COUNSEL.

10.14     No Strict Construction.  The parties hereto have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

10.15     Other Transactions.  Each of the Administrative Agent, the Lenders, and the Borrowers acknowledge that the Lenders (or Affiliates of the Lenders) may, from time to time, effect transactions for their own accounts or the accounts of customers, and hold positions in loans or options on loans of the Borrowers, the Borrowers' respective Subsidiaries and other companies that may be the subject of this credit arrangement and nothing in this Agreement shall impair the right of any such Person to enter into any such transaction (to the extent it is not expressly prohibited by the terms of this Agreement) or give any other Person any claim or right of action hereunder as a result of the existence of the credit arrangements hereunder, all of which are hereby waived.  In addition, certain Affiliates of one or more of the Lenders are or may be securities firms and as such may effect, from time to time, transactions for their own accounts or for the accounts of customers and hold positions in securities or options on securities of the Borrowers, the Borrowers' respective Subsidiaries and other companies that may be the subject of this credit arrangement and nothing in this Agreement shall impair the right of any such Person to enter into any such transaction (to the extent it is not expressly prohibited by the terms of this Agreement) or give any other Person any claim or right of action hereunder as a result of the existence of the credit arrangements hereunder, all of which are hereby waived.  Each of the Administrative Agent, the Lenders, and the Borrowers acknowledges and consents to these multiple roles, and further acknowledges that the fact that any such unit or Affiliate is providing another service or product or proposal therefor to the Borrowers or any of their respective Subsidiaries does not mean that such service, product, or proposal is or will be acceptable to any of the Administrative Agent, or the Lenders.

10.16  Patriot Act.  Each Lender hereby notifies the Borrowers that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies the Borrowers, which information includes the name and address of each Borrower and other information that will allow such Lender to identify the Borrower in accordance with the Patriot Act.

## ARTICLE XI:  THE ADMINISTRATIVE AGENT

11.1     Appointment; Nature of Relationship.  Black Diamond Commercial Finance, L.L.C. is appointed by the Lenders as the Administrative Agent hereunder and under each other

Loan Document, and each of the Lenders irrevocably authorizes the Administrative Agent to act as the contractual representative of such Lender with the rights and duties expressly set forth herein and in the other Loan Documents. The Administrative Agent agrees to act as such contractual representative upon the express conditions contained in this Article XI. Notwithstanding the use of the defined term "Administrative Agent," it is expressly understood and agreed that the Administrative Agent shall not have any fiduciary responsibilities to any Lender by reason of this Agreement and that the Administrative Agent is merely acting as the representative of the Lenders with only those duties as are expressly set forth in this Agreement and the other Loan Documents. In its capacity as the Lenders' contractual representative, the Administrative Agent (i) does not assume any fiduciary duties to any of the Lenders, (ii) is a "representative" of the Lenders within the meaning of Section 9-102 of the Uniform Commercial Code and (iii) is acting as an independent contractor, the rights and duties of which are limited to those expressly set forth in this Agreement and the other Loan Documents. Each of the Lenders, for itself and on behalf of its affiliates, agrees to assert no claim against the Administrative Agent on any agency theory or any other theory of liability for breach of fiduciary duty, all of which claims each Lender waives.

11.2 <u>Powers</u>. The Administrative Agent shall have and may exercise such powers under the Loan Documents as are specifically delegated to the Administrative Agent by the terms of each thereof, together with such powers as are reasonably incidental thereto. The Administrative Agent shall have no implied duties or fiduciary duties to the Lenders, or any obligation to the Lenders to take any action hereunder or under any of the other Loan Documents except any action specifically provided by the Loan Documents required to be taken by the Administrative Agent.

11.3 <u>General Immunity</u>. Neither the Administrative Agent nor any of its directors, officers, agents or employees shall be liable to the Borrowers or any Borrower, or the Lenders or any Lender for any action taken or omitted to be taken by it or them hereunder or under any other Loan Document or in connection herewith or therewith except to the extent such action or inaction is found in a final judgment by a court of competent jurisdiction to have arisen solely from (i) the Gross Negligence or willful misconduct of such Person or (ii) breach of contract by such Person with respect to the Loan Documents.

11.4 <u>No Responsibility for Loans, Creditworthiness, Collateral, Recitals, Etc.</u> Neither the Administrative Agent nor any of its directors, officers, agents or employees shall be responsible for or have any duty to ascertain, inquire into, or verify (i) any statement, warranty or representation made in connection with any Loan Document or any borrowing hereunder; (ii) the performance or observance of any of the covenants or agreements of any obligor under any Loan Document; (iii) the satisfaction of any condition specified in Article V, except receipt of items required to be delivered solely to the Administrative Agent; (iv) the existence or possible existence of any Default or (v) the validity, effectiveness or genuineness of any Loan Document or any other instrument or writing furnished in connection therewith. The Administrative Agent shall not be responsible to any Lender for any recitals, statements, representations or warranties herein or in any of the other Loan Documents, for the perfection or priority of any of the Liens on any of the Collateral, or for the execution, effectiveness, genuineness, validity, legality, enforceability, collectibility, or sufficiency of this Agreement or any of the other Loan

Documents or the transactions contemplated thereby, or for the financial condition of any guarantor of any or all of the Obligations, any Borrower or any of its Subsidiaries.

11.5     Action on Instructions of Lenders.  The Administrative Agent in all cases, as between the Administrative Agent and the Lenders, shall be fully protected in acting, or in refraining from acting, hereunder and under any other Loan Document in accordance with written instructions signed by the Required Lenders (or all Lenders, if applicable), and such instructions and any action taken or failure to act pursuant thereto shall be binding on all of the Lenders and on all holders of Notes.  As between the Administrative Agent and the Lenders, the Administrative Agent shall be fully justified in failing or refusing to take any action hereunder and under any other Loan Document unless it shall first be indemnified to its satisfaction by the Lenders pro rata against any and all liability, cost and expense that it may incur by reason of taking or continuing to take any such action.

11.6     Employment of Administrative Agents and Counsel.  The Administrative Agent may execute any of its duties as the Administrative Agent hereunder and under any other Loan Document by or through employees, agents (including any sub-agents or sub-servicers), and attorney-in-fact and shall not be answerable to the Lenders, except as to money or securities received by it or its authorized agents, for the default or misconduct of any such agents or attorneys-in-fact selected by it with reasonable care.  The Administrative Agent shall be entitled to advice of counsel concerning the contractual arrangement between the Administrative Agent and the Lenders and all matters pertaining to the Administrative Agent's duties hereunder and under any other Loan Document.

11.7     Reliance on Documents; Counsel.  As between the Administrative Agent and the Lenders, the Administrative Agent shall be entitled to rely upon any Note, notice, consent, certificate, affidavit, letter, telegram, statement, paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, and, in respect to legal matters, upon the opinion of counsel selected by the Administrative Agent, which counsel may be employees of the Administrative Agent.

11.8     The Administrative Agent's Reimbursement and Indemnification.  The Lenders agree to reimburse and indemnify the Administrative Agent ratably in proportion to their respective Pro Rata Shares (i) for any amounts not reimbursed by the Borrowers for which the Administrative Agent is entitled to reimbursement by the Borrowers under the Loan Documents, (ii) for any other expenses incurred by the Administrative Agent on behalf of the Lenders, in connection with the preparation, execution, delivery, administration and enforcement of the Loan Documents (including as a result of any dispute between two or more Lenders or between the Lender and any Administrative Agent) and (iii) for any liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind and nature whatsoever which may be imposed on, incurred by or asserted against the Administrative Agent in any way relating to or arising out of the Loan Documents or any other document delivered in connection therewith or the transactions contemplated thereby, or the enforcement of any of the terms thereof or of any such other documents (including as a result of any dispute between two or more Lenders or between the Lender and any Administrative Agent), provided that no Lender shall be liable for any of the foregoing to the extent any of the foregoing is found

in a final non-appealable judgment by a court of competent jurisdiction to have arisen solely from the Gross Negligence or willful misconduct of the Administrative Agent.

11.9  Rights as a Lender.  With respect to its Revolving Loan Commitments, if any, Loans made by it and the Notes issued to it, the Administrative Agent shall have the same rights and powers hereunder and under any other Loan Document as any Lender and may exercise the same as through it were not the Administrative Agent, and the term "Lender" or "Lenders" shall, unless the context otherwise indicates, include the Administrative Agent in its individual capacity.  The Administrative Agent may accept deposits from, lend money to, and generally engage in any kind of trust, debt, equity or other transaction, in addition to those contemplated by this Agreement or any other Loan Document, with any of the Borrowers or any of its Subsidiaries in which such Person is not prohibited hereby from engaging with any other Person.

11.10  Lender Credit Decision.  Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender and based on the financial statements prepared by the Borrowers and such other documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement and the other Loan Documents.  Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement and the other Loan Documents.

11.11  Successor Administrative Agent.  The Administrative Agent may resign at any time by giving written notice thereof to the Lenders and the Borrower Representative, and the Administrative Agent may be removed at any time for cause by written notice received by the Administrative Agent from the Required Lenders.  Upon any such resignation or removal, the Required Lenders shall have the right to appoint, on behalf of the Borrowers and the Lenders, a successor Administrative Agent.  If no successor Administrative Agent shall have been so appointed by the Required Lenders and shall have accepted such appointment within thirty days after the retiring Administrative Agent's giving notice of resignation, then the retiring Administrative Agent may appoint, on behalf of the Borrowers and the Lenders, a successor Administrative Agent.  Each successor Administrative Agent appointed hereunder must be (i) a commercial bank having capital and retained earnings of at least $500,000,000, and/or (ii) a Lender or an Affiliate of a Lender.  Notwithstanding anything herein to the contrary, no appointment of a successor Administrative Agent shall be subject to approval by the Borrowers.  Upon the acceptance of any appointment as the Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations hereunder and under the other Loan Documents.  After any retiring Administrative Agent's resignation hereunder as Administrative Agent, the provisions of this Article XI shall continue in effect for its benefit in respect of any actions taken or omitted to be taken by it while it was acting as the Administrative Agent hereunder and under the other Loan Documents.

11.12  Collateral Documents.  (a) Each Lender authorizes the Administrative Agent to enter into each of the Collateral Documents to which it is a party and to take all action

contemplated by such documents. Each Lender agrees that no Lender (other than the Administrative Agent) shall have the right individually to seek to realize upon the security granted by any Collateral Document, it being understood and agreed that such rights and remedies may be exercised solely by the Administrative Agent for the benefit of the Secured Parties upon the terms of the Collateral Documents.

(ii)     In the event that any Collateral is hereafter pledged by any Person as collateral security for the Obligations, the Administrative Agent is hereby authorized to execute and deliver on behalf of the Lenders any Loan Documents necessary or appropriate to grant and perfect a Lien on such Collateral in favor of the Administrative Agent on behalf of the Secured Parties.

(a)     The Lenders hereby authorize the Administrative Agent, at its option and in its discretion, to release any Lien granted to or held by the Administrative Agent upon any Collateral (i) upon termination of the Revolving Loan Commitments and payment and satisfaction of all of the Obligations (other than contingent indemnity obligations) at any time arising under or in respect of this Agreement or the Loan Documents or the transactions contemplated hereby or thereby; (ii) as permitted by, but only in accordance with, the terms of the applicable Loan Document; or (iii) if approved, authorized or ratified in writing by the Required Lenders, unless such release is required to be approved by all of the Lenders hereunder. Upon request by the Administrative Agent at any time, the Lenders will confirm in writing the Administrative Agent's authority to release particular types or items of Collateral pursuant to this Section 11.12(c).

(b)     Upon any sale or transfer of assets constituting Collateral which is permitted pursuant to the terms of any Loan Document, or consented to in writing by the Required Lenders or all of the Lenders, as applicable, and upon at least five Business Days' prior written request by the Borrower Representative to the Administrative Agent, the Administrative Agent shall (and is hereby irrevocably authorized by the Lenders to) execute such documents as may be necessary to evidence the release of the Liens granted to the Administrative Agent for the benefit of the Lenders herein or pursuant hereto upon the Collateral that was sold or transferred; provided, however, that (i) the Administrative Agent shall not be required to execute any such document on terms which, in the Administrative Agent's opinion, would expose the Administrative Agent to liability or create any obligation or entail any consequence other than the release of such Liens without recourse or warranty, and (ii) such release shall not in any manner discharge, affect or impair the Obligations or any Liens upon (or obligations of the Borrowers in respect of) all interests retained by the Borrowers, including (without limitation) the proceeds of the sale, all of which shall continue to constitute part of the Collateral.

## ARTICLE XII:  SETOFF; RATABLE PAYMENTS

12.1     Setoff.  In addition to, and without limitation of, any rights of the Lenders under applicable law, if any Default occurs and is continuing, any indebtedness from any Lender to any Borrower (including all account balances, whether provisional or final and whether or not

collected or available) may be offset and applied toward the payment of the Obligations owing to such Lender, whether or not the Obligations, or any part hereof, shall then be due.

12.2　　Ratable Payments. If any Lender, whether by setoff or otherwise, has payment made to it upon its Revolving Loans in a greater proportion than that received by any other Lender, such Lender agrees, promptly upon demand, to purchase a portion of the Loans held by the other Lenders so that after such purchase each Lender will hold its ratable proportion of Revolving Loans. If any Lender, whether in connection with setoff or amounts which might be subject to setoff or otherwise, receives collateral or other protection for its Obligation or such amounts which may be subject to setoff, such Lender agrees, promptly upon demand, to take such action necessary such that all Lenders share in the benefits of such collateral ratably in proportion to the obligations owing to them. In case any such payment is disturbed by legal process, or otherwise, appropriate further adjustments shall be made.

12.3　　Application of Payments. Subject to the provisions of Section 2.3(B)(i)(4) and Section 9.2, the Administrative Agent shall apply all payments and prepayments in respect of any Obligations and all proceeds of Collateral in the following order:

　　　　(A)　　first, to pay interest on and then principal of any portion of the Loans which the Administrative Agent may have advanced on behalf of any Lender for which the Administrative Agent has not then been reimbursed by such Lender or the Borrowers;

　　　　(B)　　second, to pay interest on and then principal of any advance made under Section 10.3 for which the Administrative Agent has not then been paid by the Borrowers or reimbursed by the Lenders;

　　　　(C)　　third, to pay Obligations in respect of any fees, expense reimbursements or indemnities then due to the Administrative Agent;

　　　　(D)　　fourth, to pay Obligations in respect of any fees, expenses, reimbursements or indemnities then due to the Lenders;

　　　　(E)　　fifth, to the ratable payment of interest due in respect of Loans;

　　　　(F)　　sixth, to the ratable payment or prepayment of principal outstanding on Loans and of Cash Management Obligations; and

　　　　(G)　　seventh, to the ratable payment of all other Obligations.

The order of priority set forth in this Section 12.3 and the related provisions of this Agreement are set forth solely to determine the rights and priorities of the Administrative Agent, and the

Lenders as among themselves. The order of priority set forth in clauses (D) through (G) of this Section 12.3 may at any time and from time to time be changed by consent of each of the Lenders without necessity of notice to or consent of or approval by any Borrower or any other Person. The order of priority set forth in clauses (A) through (C) of this Section 12.3 may be changed only with the prior written consent of the Administrative Agent.

12.4    Relations Among Lenders. Except with respect to the exercise of set-off rights of any Lender in accordance with Section 12.1, the proceeds of which are applied in accordance with this Agreement, and except as set forth in the following sentence, each Lender agrees that it will not take any action, nor institute any actions or proceedings, against any Borrower or any other obligor hereunder or with respect to any Collateral or Loan Document, without the prior written consent of the Required Lenders or, as may be provided in this Agreement or the other Loan Documents, at the direction of the Administrative Agent. The Lenders are not partners or co-venturers, and no Lender shall be liable for the acts or omissions of, or (except as otherwise set forth herein in case of the Administrative Agent) authorized to act for, any other Lender. Notwithstanding the foregoing, and subject to Section 12.2, any Lender shall have the right to enforce on an unsecured basis the payment of the principal of and interest on any Loan made by it after the date such principal or interest has become due and payable pursuant to the terms of this Agreement.

## ARTICLE XIII:  BENEFIT OF AGREEMENT; ASSIGNMENTS; PARTICIPATIONS

13.1    Successors and Assigns. The terms and provisions of the Loan Documents shall be binding upon and inure to the benefit of the Borrowers, the Lenders, and the Administrative Agent and their respective successors and assigns, except that (i) none of the Borrowers shall have the right to assign its rights or obligations under the Loan Documents, and (ii) any assignment by any Lender must be made in compliance with Section 13.3 hereof. Notwithstanding clause (ii) of this Section 13.1, any Lender may at any time, without the consent of any Borrower or the Administrative Agent, assign all or any portion of its rights under this Agreement and its Notes to a Federal Reserve Bank; provided, however, that no such assignment shall release the transferor Lender from its obligations hereunder. The Administrative Agent may treat the payee of any Note as the owner thereof for all purposes hereof unless and until such payee complies with Section 13.3 hereof in the case of an assignment thereof or, in the case of any other transfer, a written notice of the transfer is filed with the Administrative Agent. Any assignee or transferee of a Note agrees by acceptance thereof to be bound by all the terms and provisions of the Loan Documents. Any request, authority or consent of any Person, who at the time of making such request or giving such authority or consent is the holder of any Note, shall be conclusive and binding on any subsequent holder, transferee or assignee of such Note or of any Note or Notes issued in exchange therefor.

13.2    Participations.

(A)    Permitted Participants; Effect. Subject to the terms set forth in this Section 13.2, any Lender may, in accordance with applicable law, at any time sell to one or more banks or other entities ("Participants") participating interests in any Loan owing to such Lender, any Note held by such Lender, any Revolving Loan Commitment of such Lender or any other

interest of such Lender under the Loan Documents.  In the event of any such sale by a Lender of participating interests to a Participant, such Lender's obligations under the Loan Documents shall remain unchanged, such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, such Lender shall remain the holder of any such Note for all purposes under the Loan Documents, all amounts payable by the Borrowers under this Agreement shall be determined as if such Lender had not sold such participating interests, and the Borrowers and the Administrative Agent shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under the Loan Documents except that, for purposes of <u>Article IV</u> hereof, the Participants shall be entitled to the same rights as if they were Lenders.

(B)     <u>Voting Rights</u>.  Each Lender shall retain the sole right to approve, without the consent of any Participant, any amendment, modification or waiver of any provision of the Loan Documents other than any amendment, modification or waiver with respect to any Loan or Revolving Loan Commitment in which such Participant has an interest which forgives principal, interest or fees or reduces the interest rate or fees payable pursuant to the terms of this Agreement with respect to any such Loan or Revolving Loan Commitment, postpones any date fixed for any regularly-scheduled payment (but nor prepayment) of principal of, or interest or fees on, any such Loan or Revolving Loan Commitment, or releases all or substantially all of the Collateral, if any, securing any such Loan.

(C)     <u>Benefit of Setoff</u>.   The Borrowers agree that each Participant shall be deemed to have the right of setoff provided in <u>Section 12.1</u> hereof in respect to its participating interest in amounts owing under the Loan Documents to the same extent as if the amount of its participating interest were owing directly to it as a Lender under the Loan Documents, <u>provided</u> that each Lender shall retain the right of setoff provided in <u>Section 12.1</u> hereof with respect to the amount of participating interests sold to each Participant except to the extent such Participant exercises its right of setoff.   The Lenders agree to share with each Participant, and each Participant, by exercising the right of setoff provided in <u>Section 12.1</u> hereof, agrees to share with each Lender, any amount received pursuant to the exercise of its right of setoff, such amounts to be shared in accordance with <u>Section 12.2</u> as if each Participant were a Lender.

13.3     <u>Assignments</u>.

(A)     <u>Permitted Assignments</u>.  Any Lender may, in accordance with applicable law, at any time assign to one or more banks or other entities ("<u>Purchasers</u>") all or a portion of its rights and obligations under this Agreement (including, without limitation, any Revolving Loan Commitment and all Loans owing to it) in accordance with the provisions of this <u>Section 13.3</u>; <u>provided</u>, <u>however</u>, that each such assignment shall be an assignment of not less than $5,000,000 of the assigning Lender's Revolving Loan Commitments, and shall be of a constant, and not a varying, percentage of all of the assigning Lender's corresponding rights and obligations under this Agreement.  Such assignment shall be substantially in the form of <u>Exhibit H</u> hereto and shall not be permitted hereunder without the prior written consent of the Administrative Agent, such consent not to be unreasonably withheld.

(B)    Effect; Effective Date.  Upon (i) delivery to the Administrative Agent of a notice of assignment, substantially in the form attached as Appendix I to Exhibit H hereto (a "Notice of Assignment") and (ii) payment of a $3,500 fee by the assignee or the assignor (as agreed) to the Administrative Agent for processing such assignment, subject to consent by the Administrative Agent as required by Section 13.3(A), such assignment shall become effective on the effective date specified in such Notice of Assignment.  The Notice of Assignment shall contain a representation by the Purchaser to the effect that none of the consideration used to make the purchase of the Revolving Loan Commitments and Loans under the applicable assignment agreement are "plan assets" as defined under ERISA and that the rights and interests of the Purchaser in and under the Loan Documents will not be "plan assets" under ERISA.  On and after the effective date of such assignment, such Purchaser, if not already a Lender, shall for all purposes be a Lender party to this Agreement and any other Loan Documents executed by the Lenders and shall have all the rights and obligations of a Lender under the Loan Documents, to the same extent as if it were an original party hereto, and no further consent or action by the Borrowers, the Lenders or the Administrative Agent shall be required to release the transferor Lender with respect to the percentage of the Revolving Loan Commitments and Loans assigned to such Purchaser.  Upon the consummation of any assignment to a Purchaser pursuant to this Section 13.3(B), the transferor Lender, the Administrative Agent and the Borrowers shall make appropriate arrangements so that replacement Notes are issued to such transferor Lender and new Notes or, as appropriate, replacement Notes, are issued to such Purchaser, in each case in principal amounts reflecting their Revolving Loan Commitment, as adjusted pursuant to such assignment, and in each case as requested by such transferor or Purchaser.

(C)    The Register.  The Administrative Agent shall maintain at its address referred to in Section 14.1 a copy of each assignment delivered to and accepted by it pursuant to this Section 13.3 and a register (the "Register") for the recordation of the names and addresses of the Lenders and the Revolving Loan Commitments and principal amount of the Loans owing to, each Lender from time to time and whether such Lender is an original Lender or the assignee of another Lender pursuant to an assignment under this Section 13.3.  Each Borrower, the Administrative Agent and the Lenders shall treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement.  The Register shall be available for inspection by the Borrowers or any Lender at any reasonable time and from time to time upon reasonable prior notice.

13.4    Confidentiality.  Subject to Section 13.5, the Administrative Agent and the Lenders and their respective representatives, consultants and advisors shall hold all nonpublic information obtained pursuant to the requirements of this Agreement and identified as such by a Borrower in accordance with such Person's customary procedures for handling confidential information of this nature and in accordance with safe and sound banking practices and in any event may make disclosure (a) to Affiliates of the Administrative Agent or the Lenders, (b) as reasonably required by a prospective Transferee in connection with the contemplated participation or assignment, or (c) as required or requested by any Governmental Authority or representative thereof or pursuant to legal process and shall require any such Affiliate or Transferee to agree (and require any of its Transferees to agree in writing) to comply with this Section 13.4.  In no event shall the Administrative Agent or any Lender or any of their Affiliates be obligated or required to return any materials furnished by any Borrower; provided, however, each prospective Transferee shall be required to agree that if it does not become a participant or

114

assignee it shall return all materials furnished to it by or on behalf of a Borrower in connection with this Agreement.

13.5    _Dissemination of Information_.   The Borrowers authorizes each Lender and each Affiliate of each Lender to disclose to any Participant or Purchaser or any other Person acquiring an interest in the Loan Documents by operation of law (each a "Transferee") and any prospective Transferee any and all information in such Lender's or Affiliate's possession concerning each of the Borrowers and its Subsidiaries and the Collateral; provided that prior to any such disclosure, such prospective Transferee shall agree in writing to preserve in accordance with Section 13.4 the confidentiality of any confidential information described therein.

## ARTICLE XIV: NOTICES

14.1    _Giving Notice_.   Except as otherwise permitted by Section 2.12 with respect to borrowing notices, all notices and other communications provided to any party hereto under this Agreement or any other Loan Documents shall be in writing or by telex or by facsimile and addressed or delivered to such party at its address set forth beneath its signature on the signature pages hereto or at such other address as may be designated by such party in a notice to the other parties; provided, however, that any notice or other communication required to be provided to any Borrower under any Loan Document shall be effective if delivered to the Borrower Representative in accordance with the applicable terms of the Loan Documents.   Any notice, if mailed and properly addressed with postage prepaid, shall be deemed given when received; any notice, if transmitted by telex or facsimile, shall be deemed given when transmitted (answerback confirmed in the case of telexes).

14.2    _Change of Address_.   The Borrower Representative, the Administrative Agent and any Lender may each change the address for service of notice upon it by a notice in writing to the other parties hereto.

## ARTICLE XV: COUNTERPARTS

15.1    _Counterparts_.   This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement, and any of the parties hereto may execute this Agreement by signing any such counterpart.   Delivery of an executed signature page of this Agreement by email or facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.

The remainder of this page is intentionally blank.

IN WITNESS WHEREOF, the Borrowers, the Lenders and the Administrative Agent have executed this Agreement as of the date first above written.

**PTC ALLIANCE CORP**,
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:

Address for Notices for all Borrowers:

PTC Alliance Corp.
Copperleaf Corporate Centre
6051 Wallace Road Ext., Suite 200
Wexford, PA 15090
Attention: Peter Whiting
Telephone No.: 412-299-2646
Facsimile No.: 412-299-2619

With a Copy to:

Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Attention: Pasquale D. Gentile, Jr.
Telephone No.: 412-288-4112
Facsimile No.: 412-288-3063

**PTC TUBULAR PRODUCTS LLC,**
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:


**MID-WEST MFG. CO.,**
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:


**ALLIANCE TUBULAR PRODUCTS CO.,**
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:


**ENDURO INDUSTRIES, INC.,**
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:


**PT/VW CORPORATION,**
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:

**PACD ACQUISITION LLC,**
debtor and debtor-in-possession, as a Borrower


By:_____
Name:
Title:

**BLACK DIAMOND COMMERCIAL FINANCE, L.L.C.**, as Administrative Agent and as a Lender


By:_____
    Name:
    Title:

<u>Address for Notices</u>:

100 Field Drive
Lake Forest, IL  60045-2580
Attention: Hugo H. Gravenhorst
Telephone No.: (847) 582-9138
Facsimile No.:  (847) 615-9064

<u>With a Copy to</u>:

Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Attention: Timothy J. Dable, Esq.
Telephone No.:  (312) 558-6369
Facsimile No.:   (312) 558-5700

**BDCM OPPORTUNITY FUND, L.P.**
by Black Diamond Capital Management, L.L.C.
its General Partner


By:_____
      Name:
      Title:

Address for Notices:

BDCM Opportunity Fund, L.P.
c/o Black Diamond Capital Management, L.L.C.
Once Conway Park
100 Field Drive, Suite 140
Lake Forest, IL 60045
Attention: Loan Administrator
Telephone No.: (847) 582-9104
Facsimile No.: (847) 582-9144

With a Copy to:

Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Attention: Timothy J. Dable, Esq.
Telephone No.: (312) 558-6369
Facsimile No.: (312) 558-5700

**[Other Lenders]**


By:_____
      Name:
      Title:

<u>Address for Notices</u>:


Attention:
Telephone No.:
Facsimile No.:

<u>With a Copy to</u>:

Attention:
Telephone No.:
Facsimile No.: