**EXHIBIT A**

**Pollack Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PTC Alliance Corp., *et al.*,[1] | ) | Case No. 09-13395 (CSS) |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

## DECLARATION OF GLENN POLLACK IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF CANDLEWOOD PARTNERS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE, AND REQUEST FOR A WAIVER OF THE INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

I, Glenn Pollack, pursuant to 28 U.S.C. § 1746, declare that the following is true to the best of my knowledge, information and belief:

1.     I am a Managing Director of Candlewood Partners, LLC ("**Candlewood**"), which maintains an office at 10½ East Washington Street, Cleveland, Ohio 44022. I submit this Declaration in support of the Application (the "**Application**")[2] of the Debtors For Entry of an Order Authorizing Retention of Candlewood Partners, LLC as Investment Banker and Financial Advisor to the Debtors, effective as of the Petition Date. Unless otherwise stated in the Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.

---

[1]     The Debtors in these cases, along with the last four digits of their federal tax identification numbers are: PTC Alliance Corp. (2395), with a principal executive office located at 6051 Wallace Road Ext., Suite 200, Wexford, PA 15090; Alliance Tubular Products Co. (7185), with a principal executive office located at 640 Keystone Street, Alliance, OH 44601; PACD Acquisition (3405), with a principal executive office located at 4400 west 3rd, Beaver Falls, PA 15010; Enduro Industries, Inc. (4669), with a principal executive office located at 2001 Orchard Avenue, Hannibal, MO 64031; PTC Tubular Products, LLC (9342), with a principal executive office located at 23041 E 800 North Road, Fairbury, IL 61739-8824; Mid-West Manufacturing Company (0660), with a principal executive office located at 475 East 16th Street, Chicago Heights, IL 60411; and PT VW (9385), with a principal executive office located at 6051 Wallace Road Ext., Suite 200, Wexford, PA 15090.

[2]     Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Application.

## Qualifications

2.     I and the other professionals employed by Candlewood are qualified to act as the Debtors' investment bankers and financial advisors.  Candlewood is an investment banking and financial advisory firm, and has the requisite experience to perform the services specified above.  Candlewood specializes in working on behalf of parties-in-interest to underperforming and troubled companies, and it and its employees have had extensive restructuring and transactional experience in many industries.

## Candlewood's Pre-Petition Relationship With the Debtors

3.     Candlewood was engaged to represent the Debtors in their restructuring and Chapter 11 cases on August 5, 2009, pursuant to the terms of the Engagement Agreement, a copy of which is attached hereto as **Exhibit 1**.  Candlewood thereafter provided financial advisory services to the Debtors.  Because of this background, Candlewood is familiar with the Debtors' business and has the necessary knowledge to effectively serve the Debtors in their chapter 11 cases.

## Services To Be Rendered

4.     The investment banking and financial advisory services Candlewood has been engaged to provide to the Debtors may be summarized as follows:

a.     Familiarize itself, to the extent Candlewood deems appropriate and feasible, with the business, operations, properties, financial condition and prospects of the Debtors;

b.     Develop and, at the Debtors' direction, execute a strategic plan to market and sell the Debtors' assets, in one or more transactions, pursuant to section 363 of the Bankruptcy Code;

c.     Assist the Debtors in preparing presentations, discussions and due diligence materials relating to the sale;

d.     Assist the Debtors in the preparation of a confidential information package describing the Debtors and in the preparation and negotiations of any confidentiality

agreements to be entered into by third parties potentially interested in entering into the sale, all of which shall be subject to approval by the Debtors;

        e.     At the board's request (i) render an opinion in writing addressed to the Board as to the fairness, from a financial point of view, of the sale or (ii) advise the board that Candlewood is unable tor render such an opinion, which opinion, if rendered, shall be in customary form with such customary qualifications as deemed appropriate by Candlewood; and

        f.     At the Debtors' request, make presentations to the Debtors' senior management and/or Board of Directors of the company on the status of any negotiations or discussions regarding the same; and

        g.     Provide such other financial advisory and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Debtors and Candlewood, including but not limited to appearing in court to testify with respect to the services rendered by Candlewood if and when requested by the Debtors.

        5.     Candlewood does not have any pre-petition claims against the Debtors. Prior to the Petition Date, Candlewood received $220,000 from the Debtors, which included the payment of (a) the Monthly Retainer Fee for August, September and October, (b) $20,000 expense reimbursement, and (c) a $50,000 Chapter 11 deposit.

## Compensation

        6.     Subject to the Court's approval, and in accordance with section 328(a) of the Bankruptcy Code, Candlewood will be paid post petition pursuant to the terms of the Engagement Letter as follows:

        a.     Monthly Retainer Fee of $50,000.00

        b.     If the Debtor completes, or enters into a definitive agreement to complete, any Sale with any party or parties during the Term of this Modified Agreement or with a Covered Party within 12 months following the termination of this Modified Agreement pursuant to paragraph 5 of the Engagement Letter, the Debtor shall pay Candlewood a fee (the "**Sale Fee**") equal to (i) if the Sale is to an existing Lender, then $350,000 plus three percent (3.0%) of the total aggregate Consideration in excess of the Credit Bid (as defined in the Engagement Letter) (the "**Percentage Fee A**"); (ii) if the Sale is to a purchaser unaffiliated with an existing Lender, then $150,000 plus one percent (1.0%) of the total aggregate Consideration in excess of ten million dollars ($10,000,000) (the "**Percentage Fee B**"). The Sale Fee shall be fully earned, due and payable no later than the closing of the Sale (i.e., the execution of unconditional documentation with respect thereto). Any order of the

United States Bankruptcy Court approving a Sale under section 363 of the Bankruptcy Code shall provide that the Sale Fee shall be paid out of the Sale proceeds.

     c.     To the extent that Candlewood is entitled to a Sale Fee, fifty percent (50%) of the Monthly Retainer Fee paid to Candlewood shall be credited against the Sale Fee.

     7.     Candlewood also will be reimbursed for reasonable out-of-pocket expenses incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger, and telephone charges. The compensation arrangement set forth in the Engagement Letter is herein after referred to as the "Fee Structure."

     8.     The overall compensation structure described above is comparable to compensation generally charged by corporate finance firms of similar stature to Candlewood for comparable engagements, both in and out of court. Candlewood's restructuring expertise, as well as its capital markets knowledge, financing skills and merger and acquisition capabilities, some or all of which may be required by the Debtors during the term of Candlewood's engagement, were important factors in Candlewood's determination of the amount of its fees, and the Debtors believe that the ultimate benefit to the Debtors of Candlewood's services hereunder cannot be measured merely by reference to the number of hours to be expended by Candlewood's professionals in the performance of services.

     9.     Candlewood seeks compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases consistent with the terms for compensation set forth in the Engagement Letter. Further, because the Debtors are seeking to retain Candlewood under section 328(a) of the Bankruptcy Code, the Debtors believe that Candlewood's compensation and expenses (including, without limitation, the Fee Structure) should not be subject to the standard of review under section 330 of the Bankruptcy Code.

**Disinterestedness**

10.    Candlewood does not hold any pre-petition claims against the Debtors. Except as otherwise set forth herein, to the best of my knowledge, information and belief, (a) Candlewood does not hold or represent any interest adverse to the Debtors, their creditors or other parties-in-interest, with respect to the matters upon which Candlewood is to be engaged and (b) Candlewood is not connected with the Debtors, their creditors or other parties-in-interest. Accordingly, I respectfully submit that Candlewood is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.

11.    Prior to the Petition Date, Candlewood received $220,000 from the Debtors, which included the payment of (a) the Monthly Retainer Fee for August, September and October, (b) $20,000 expense reimbursement, and (c) a $50,000 Chapter 11 deposit.

12.    Candlewood has not shared or agreed to share any of its compensation for its services to the Debtors with any other person, other than with a principal or employee of Candlewood, as permitted by section 504 of the Bankruptcy Code.

13.    It should be understood that Candlewood's present and former clients and such clients' affiliates, officers, directors, principal shareholders and their respective affiliates may have had relationships with the Debtors, their creditors or equity holders of which Candlewood was not informed or may have developed relationships of which Candlewood is unaware subsequent to the performance of Candlewood's services.  If Candlewood discovers additional information that requires disclosure, Candlewood will file a supplemental disclosure with the Court as promptly as possible.

14.    I further state that, to the best of my knowledge, information and belief, the proposed engagement of Candlewood is not prohibited by Bankruptcy Rule 5002.

15.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 8, 2009

Glenn Pollack

## EXHIBIT 1

## Original Engagement Letter

**CONFIDENTIAL**

August 5, 2009

Mr. Thomas W. Crowley
Chief Financial Officer
PTC Alliance Corp.
6051 Wallace Road Extension
Suite 200
Wexford, PA 15090

> Re:    **PTC Alliance Corp.**
>        **Candlewood Partners, LLC Engagement Letter**

Dear Mr. Crowley:

1. <u>Scope of Engagement</u>.    This letter will set forth the terms of the agreement pursuant to which Candlewood Partners or any of its affiliates (collectively, "CP") will serve as exclusive financial advisor and investment banker to PTC Alliance Corp. (the "Company"). In connection with this engagement, CP will:

   a) Familiarize itself, to the extent CP deems appropriate and feasible, with the business, operations, properties, financial condition and prospects of the Company;

   b) Develop and, at the Company's direction, execute a strategic plan to market and sell the Company's assets, in one or more transactions, pursuant to section 363 of the Bankruptcy Code (a "Sale");

   c) Assist the Company in preparing presentations, discussions and due diligence materials relating to the Sale;

   d) Assist the Company in the preparation of a confidential information package describing the Company (a "Memorandum") and in the preparation and negotiations of any confidentiality agreements to be entered into by third parties potentially interested in entering into the Sale, all of which shall be subject to approval by the Company;

   e) At the Board's request, (i) render an opinion in writing addressed to the Board (an "Opinion") as to the fairness, from a financial point of view, of the Sale or (ii) advise the Board that CP is unable to render such an Opinion. The Opinion will be in customary form and with such customary qualifications as deemed appropriate by CP;

f) At the Company's request, make presentations to the Company's senior management and/or the Board of Directors of the Company on the status of any negotiations or discussions regarding the Sale; and

g) Provide such other financial advisory and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Company and CP, including but not limited to appearing in court to testify with respect to the services rendered by CP if and when requested by the Company.

2. <u>Other Responsibilities</u>.

a) CP shall be the Company's exclusive financial advisor and investment banker in connection with the Sale undertaken by the Company during the term of this Agreement. The Company agrees that, during the term of this Agreement, CP shall, on a best efforts basis, identify potential counter-parties to the Sale and shall have the exclusive authority to initiate and conduct discussions, and assist and advise the Company in its negotiations, with all prospective counter-parties to the Sale. The Company agrees to identify to CP all prospective counter-parties to the Sale who have been in contact with the Company within the six months prior to the date hereof and all such prospective counter-parties who come in contact with the Company during the term of this Agreement, each of which contacts shall be a Covered Party (as defined below) for purposes of this Agreement.

b) The Company may refuse to discuss or negotiate the Sale with any party for any reason whatsoever and may terminate negotiations with any party, whether or not previously approved by the Company, at any time.

3. <u>Compensation</u>.

a) The Company shall pay CP a non-refundable retainer of fifty thousand dollars ($50,000) per month (the "Monthly Retainer Fee"). The first such retainer payment shall be made on the date of execution of this Agreement and further payments of such retainer shall be fully earned, due and payable, in advance, on the same date of each subsequent month through the term of this Agreement. The Monthly Retainer Fee shall be due and payable in respect of each calendar month of the term of this Agreement, through and including the month in which this Agreement is terminated. In the event the Company is required to pay CP a Sale Fee (defined below), 50.0% of the Monthly Retainer Fees paid shall be credited against the Sale Fee.

b) In addition to the Monthly Retainer Fees if the Company completes a Sale with any party during the Term of this Agreement or with a Covered Party within 12 months following the termination of this Agreement pursuant to paragraph 7 below, the

Company shall pay CP a fee (the "Sale Fee"). The Sale Fee shall be calculated as follows:

    i. If the Covered Party acquiring the assets is an existing Lender to the Company as of the date of this Agreement, the Sale Fee shall be the total of:

        1. Three hundred and fifty thousand dollars ($350,000), plus
        2. Three percent (3%) of the total Consideration (as defined below) in excess of the amount Credit Bid.

    ii. If the Covered Party acquiring the assets is not an existing Lender to the Company as of the date of this Agreement, the Sale Fee shall be the total of:

        1. One hundred and fifty thousand dollars ($150,000) plus
        2. One percent (1%) of the total Consideration (as defined below) in excess of ten million dollars ($10,000,000).

The Sale Fee shall be fully earned, due and payable no later than the closing of the Sale (i.e., the execution of unconditional documentation with respect thereto).

For purposes of this Agreement, "Consideration" shall mean the sum of the cash; amount of credit bid made by any of the Company's creditors ("Credit Bid"); market value of marketable equity securities or interests; fair market value of unmarketable equity securities or interests; the face value of cash flows to be received by the Company under non-contingent straight and convertible debt instruments or other such obligations, issued or issuable from an acquiring party in connection with the Sale; the present value (discounted at a rate of 8% per annum) of the face amount of earn-out obligations from an acquiring party in connection with the Sale; the net book value of any assets retained by the Company in lieu of other Consideration; the face amount of any accounts payable owed by the Company other than on ordinary and customary industry terms; any assumption of indebtedness for money borrowed including guarantees assumed by the acquiror in connection with the Sale; any assumption of long term liabilities (including, but not limited to, underfunded pension liabilities, other underfunded employee or retiree benefits, environmental liabilities, reserves for law suits and other liabilities, product liability amounts and capital lease obligations); the present value (discounted at a rate of 8% per annum) of any contracts or agreements not to compete and of any personal service contracts or agreements which are in excess of such personal service contracts or agreements in effect for owners of the Company prior to the closing of the Sale. Consideration in the form of private company stock or assets shall be valued at the market value mutually agreed upon by the parties in good faith as of the closing.

4.  <u>Reimbursement of Expenses.</u>    The Company shall reimburse CP, from time to time on demand, for all reasonable out-of-pocket expenses incurred by CP in connection with its services hereunder.    Out-of-pocket expenses shall include all travel-related, telephone, facsimile, memoranda production costs, duplication, courier, database research, and other similar expenses and the reasonable fees and expenses of CP's counsel.

5.  <u>Information.</u>    The Company will make available to CP information concerning the business, assets, operations and financial condition of the Company reasonably available (the "Information") that CP reasonably requests in connection with the performance of its obligations hereunder. The Company will promptly advise CP of all developments materially affecting the Company during the term of this Agreement.  The Company acknowledges and agrees that in rendering services hereunder, CP will be using and relying solely upon the Information (and information available from public sources and other sources deemed reliable by CP) without independent verification thereof by CP and does not assume any responsibility for the accuracy or completeness of the Information and such other information.

6.  <u>Confidentiality.</u>

    (a)    All opinions and advice (written or oral) given by CP to the Company in connection with CP's engagement hereunder are intended solely for the benefit and use of the Company and shall be treated as confidential by the Company, and the Company agrees that no such opinion or advice shall be used, reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall the Company make any public references to CP, without CP's prior written consent or except as may otherwise be required by applicable law.  In addition, the Company agrees that it shall not use, distribute, reproduce or reference in any manner any descriptive material prepared with CP's assistance, including any materials prepared in connection with a potential financing except to prospective counter-parties who have executed confidentiality agreements in form and substance approved by the Company and CP or otherwise with CP's prior written consent.

    (b)    CP agrees to keep confidential all Information and that neither it nor its directors, officers, principals, employees, agents or attorneys will disclose to any other person or entity, or use for any purpose other than specified herein, any Information, except as required to be disclosed by court order or other legal process.  CP may make reasonable disclosures of Information to third parties in connection with its performance of its obligations and assignments under this Agreement.  In addition, CP may disclose to others in the normal course of business its involvement with the Company.

7. <u>Termination and Survival</u>.     Either party may terminate this engagement at any time with or without cause by giving the other party at least 15 business days prior written notice of termination. On or prior to the effective date of any such termination, CP shall deliver to the Company a list of all parties with which CP or the Company has had contacts or discussions concerning the Sale (each, a "Covered Party" and together, the "Covered Parties") after the date of this Agreement but prior to the receipt of the notice of termination.

Upon termination of the Agreement, neither party will have any liability or continuing obligation to the other, except that: (i) the provisions of Exhibit A to this Agreement and the confidentiality provisions contained in Section 6 and the provisions of paragraphs 9, 10, 11, 12, 13 and 14 hereof will survive any such termination; (ii) the Company will remain liable for CP's reasonable out-of-pocket expenses incurred and fees earned up to the time of termination and (iii) if the Company completes a transaction with a Covered Party within the periods subsequent to termination specified in Section 3 of this Agreement, then the Company shall be responsible for payment the fees described in Section 3 of this Agreement upon the closing of such a transaction.

8. <u>Bankruptcy.</u>     In the event that the Company is or becomes a debtor under chapter 11 of the United States Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (a) this Agreement and (b) CP's retention by the Company under the terms of this Agreement and not subject to the standard of review provided under section 330 of the Bankruptcy Code. The Company shall supply CP with a draft of such application and any proposed order authorizing CP's retention sufficiently in advance to review and comment thereon. CP acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, CP's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders, <u>provided, however,</u> that the Company shall include in its application to retain and employ CP a request that CP be excused from keeping time records in 1/10 hour increments. In the event the Company becomes a debtor under the Bankruptcy Code and CP's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of CP hereunder as promptly as practicable in accordance with the terms hereof. Prior to the commencement of a chapter 11 case, the Company shall pay all invoiced amounts to CP in immediately available funds by wire transfer or certified or cashier's check. Furthermore, with respect to CP's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that CP's investment banking expertise, as well as its capital markets knowledge, financing skills and marketing and sales capabilities, some or all of which may be required by the Company during the term of CP's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of CP's services hereunder could not be measured merely by reference to the number of hours to be expended by CP's professionals in the

performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of CP and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for CP and that the actual time and commitment required of CP and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for CP. In addition, given the numerous issues which CP may be required to address in the performance of its services hereunder, CP's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for CP's services for engagements hereunder, are reasonable under the standards set forth in 11 U.S.C. § 328(a).

9. <u>Indemnification, Contribution and Limitation of Liability.</u>    Recognizing that CP's role is advisory, the Company agrees to indemnify CP and its controlling persons, representatives and agents in accordance with the indemnification provisions set forth in Exhibit A, and agrees to the other provisions of Exhibit A, which is incorporated herein by reference.

10. <u>No Representations or Warranties.</u>    The Company hereby acknowledges and agrees that it is a sophisticated business enterprise that has retained CP for the limited purposes set forth in this Agreement and that the rights and obligations of the parties hereto are contractual in nature and that CP has not made any warranties or guarantees of any nature as to the success or satisfactory conclusion of the Sale or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof. Each of the Company and CP disclaim any intention to impose fiduciary duties or obligations on the other by virtue of the engagement contemplated by this Agreement, and no other person or entity shall have any rights or obligations hereunder except as expressly provided herein.

11. <u>Private Investment Activity.</u>    CP and its affiliates are engaged in private investment activities, as well as providing investment banking and financial advisory services. Nothing in this Agreement shall be construed to prohibit or limit the ability of CP or its affiliates from pursuing, investigating, analyzing or engaging in investment banking, financial advisory and other business relationships with entities other than the Company, notwithstanding that such entities may be engaged in a business which is similar to the business of the Company, and notwithstanding that such entities may have customers, or potential customers, similar or identical to the Company's, or may have been or may be identified as potential merger or acquisition targets or potential candidates for some other business combination, cooperation or relationship.

12. <u>Advertisement.</u>    If the Sale is completed pursuant to this Agreement, CP may, at its expense and with the Company's approval (which approval shall not be unreasonably withheld or delayed), place an announcement in such newspapers and periodicals as it may

choose stating that CP has acted as financial advisor and investment banker for the Company in such transaction and otherwise distribute such announcement as it shall see fit.

13. <u>Assignment to Affiliate</u>. The Company acknowledges and agrees that CP may assign the performance of certain portions of this Agreement to its affiliate, Candlewood Securities LLC, a licensed broker-dealer.

14. <u>Miscellaneous</u>. This Agreement has been duly and validly executed by the parties hereto and shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. This Agreement represents the entire understanding between the parties, and all prior discussions and negotiations are merged in it. This Agreement may not be modified or amended except in writing duly executed by the parties hereto. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without reference to that state's conflict of laws principles. The Company hereby expressly consents to the nonexclusive personal jurisdiction and venue of the state and federal courts located in the Commonwealth of Pennsylvania for any lawsuit filed there against the Company by CP arising from or relating to this Agreement.

If the foregoing correctly sets forth the understanding and agreement between CP and the Company, please so indicate in the space provided below and return it to CP prior to 5:00 p.m. E.S.T. on August 5, 2009. If CP has not received an executed Agreement from the Company prior to such time, this Agreement shall be void and of no effect, and no rights or obligations on the part of either CP or the Company shall be deemed to have been created.

Sincerely,

Candlewood Partners, LLC

By: _Michael Salgat_

Michael Salgat

AGREED AND ACCEPTED:

PTC ALLIANCE CORP.

By: _T. W. Crowley_

Thomas W. Crowley
Its: Chief Financial Officer

## EXHIBIT A

The Company agrees to indemnify and hold harmless CP and its affiliates (as defined in Rule 405 under the Securities Act of 1933, as amended) and their respective directors, officers, employees, agents and controlling persons (CP and each such person being an "Indemnified Party") from and against all losses, claims, damages and liabilities (or actions, including shareholder actions, in respect thereof), joint or several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, which are related to or result from the performance by CP of the services contemplated by or the engagement of CP pursuant to this Agreement, and will promptly reimburse any Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense arising from any threatened or pending claim, whether or not such Indemnified Party is a party to the claim and whether or not such claim, action or proceeding is initiated or brought by the Company. The Company will not be liable to any Indemnified Party under the foregoing indemnification and reimbursement provisions, (i) for any settlement by an Indemnified Party effected without its prior written consent (not to be unreasonably withheld); or (ii) to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from CP's willful misconduct or gross negligence. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of CP pursuant to, or the performance by CP of the services contemplated by, this Agreement except to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from CP's willful misconduct or gross negligence.

Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit or proceeding or notice of the commencement of any action, suit or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Company pursuant hereto, promptly notify the Company in writing of the same. In case any such action is brought against any Indemnified Party and such Indemnified Party notifies the Company of the commencement thereof, the Company may elect to assume the defense thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action, provided that the employment of such counsel shall be at the Indemnified Party's own expense, unless (i) the employment of such counsel has been authorized in writing by the Company, (ii) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or that a conflict or potential conflict exists (based upon advice of counsel to the Indemnified Party) between the Indemnified Party and the Company that makes it impossible or inadvisable for counsel to the Company to conduct the defense of both the

Company and the Indemnified Party (in which case the Company will not have the right to direct the defense of such action on behalf of the Indemnified Party), or (iii) the Company has not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit or proceeding, in each of which cases, the reasonable fees, disbursements and other charges of such counsel will be at the expense of the Company; provided, further, that in no event shall the Company be required to pay fees and expenses for more than one firm of attorneys representing Indemnified Parties unless the defense of one Indemnified Party is unique or separate from that of another Indemnified Party subject to the same claim or action. Any failure or delay by an Indemnified Party to give the notice referred to in this paragraph shall not affect such Indemnified Party's right to be indemnified hereunder, except to the extent that such failure or delay causes actual harm to the Company, or prejudices its ability to defend such action, suit or proceeding on behalf of such Indemnified Party.

If the indemnification provided for in this Agreement is for any reason held unenforceable by an Indemnified Party, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and CP on the other hand, of the transaction contemplated by the Agreement whether or not the transaction is consummated and also the relative fault of the Company, on the one hand and CP, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and CP of a transaction contemplated under this Agreement shall be deemed to be in the same proportion that the total value received or contemplated to be received by the Company (or its shareholders, as the case may be), as a result of or in connection with the transaction, bear to the fees paid or to be paid to CP under this Agreement. Notwithstanding the foregoing, the Company expressly agrees that CP shall not be required to contribute any amount in excess of the amount by which fees paid to CP pursuant to this Agreement (excluding reimbursable expenses), exceeds the amount of any damages which CP has otherwise been required to pay.

The Company agrees that without CP's prior written consent, which shall not be unreasonably withheld, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under the indemnification provisions of this Agreement (in which CP or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding.

In the event that an Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company in which such Indemnified Party is

not named as a defendant, the Company agrees to promptly reimburse CP on a monthly basis for all expenses incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, plus reasonable out-of-pocket expenses and costs should CP be required to provide testimony in any formal or informal proceeding regarding the Company.

If multiple claims are brought with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or arbitration award expressly states that it, or any portion thereof, is based solely on a claim as to which indemnification is not available.

# EXHIBIT 2

## Data Sources for Conflict Check

| | |
|---|---|
| 1. | **Top 30 Unsecured Creditors as of September 30, 2009** |
| 2. | **All Unsecured Creditors as of August 31, 2009** |
| 3. | **All Secured Creditors** |
| 4. | **Institutions with PTC Bank Accounts and Letter of Credit Facilities** |
| 5. | **Utilities** |
| 6. | **All Active Employees** |
| 7. | **Employees on Layoff or Leave of Absence** |
| 8. | **Pensioners and Retirees** |
| 9. | **Unions** |
| 10. | **Customers** |
| 11. | **Counterparties to Insurance** |
| 12. | **Counterparties to Executory Contracts** |
| 13. | **Counterparties to Leased Real Property** |
| 14. | **Regulatory Agencies and Superfund Sites Parties** |
| 15. | **Counterparties to Litigation** |
| 16. | **Workers Compensation Claimants** |
| 17. | **Shareholders** |
| 18. | **Officers & Director** |
| 19. | **Taxing Authorities** |

{00001556.2 }US_ACTIVE-102425750.5-AMTONTI

**EXHIBIT B**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PTC Alliance Corp., *et al.*,[1] | ) | Case No. 09-13395 (CSS) |
| | ) | Joint Administration Requested |
| Debtors. | ) | **Hearing Date:  To Be Determined** |
| | ) | **Objection Deadline:  To Be Determined** |

## ORDER AUTHORIZING THE DEBTORS TO RETAIN CANDLEWOOD PARTNERS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE

This matter coming to be heard on the Debtors' Application for Authority to Retain

Candlewood Partners, LLC ("**Candlewood**") as Investment Banker and Financial Advisor to the

Debtors,[2] Effective as of the Petition Date (the "**Application**"); and the Court having reviewed

the Application, the engagement letter dated August 5, 2009 (the "**Engagement Letter**"), and

the Declaration of Glenn Pollack (the "**Pollack Declaration**"); and having heard the statements

of counsel at the hearing on the Application (the "**Hearing**"); and the Court finding that: (a) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157; (b) notice of the Application

and the Hearing was sufficient under the circumstances; (c) the Court having determined that

Candlewood is a "disinterested person" pursuant to § 101(14) of the Bankruptcy Code; and (d)

---

[1]     The Debtors in these cases, along with the last four digits of their federal tax identification numbers are: PTC Alliance Corp. (2395), with a principal executive office located at 6051 Wallace Road Ext., Suite 200, Wexford, PA 15090; Alliance Tubular Products Co. (7185), with a principal executive office located at 640 Keystone Street, Alliance, OH 44601; PACD Acquisition (3405), with a principal executive office located at 4400 west 3rd, Beaver Falls, PA 15010; Enduro Industries, Inc. (4669), with a principal executive office located at 2001 Orchard Avenue, Hannibal, MO 64031; PTC Tubular Products, LLC (9342), with a principal executive office located at 23041 E 800 North Road, Fairbury, IL 61739-8824; Mid-West Manufacturing Company (0660), with a principal executive office located at 475 East 16th Street, Chicago Heights, IL 60411; and PT VW (9385), with a principal executive office located at 6051 Wallace Road Ext., Suite 200, Wexford, PA 15090.

[2]     All terms not otherwise defined herein shall have the meaning ascribed to them in the Application or the Engagement Letter.

the Court having determined that the legal and factual bases set forth in the Application and the Pollack Declaration establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.      The Application be, and hereby is, GRANTED as set forth below.

2.      The Debtors are authorized to retain and employ Candlewood as an Investment Banker and Financial Advisor Effective as of the Petition Date pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and the terms set forth in the Engagement Letter.

3.      The terms and conditions of Candlewood's retention including, without limitation, the Fee Structure, are approved pursuant to section 328(a) of the Bankruptcy Code, and will not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

4.      Any Order of this Court approving a Sale pursuant to section 363 of the Bankruptcy Code shall provide that the Sale Fee shall be paid out of the Sale proceeds.

5.      Subject to the foregoing, Candlewood will file applications for monthly, interim and final allowance of compensation and reimbursement of expenses; provided, however, that Candlewood shall be excused from maintaining time records as set forth in Local Rule 2016 in connection with the services to be rendered pursuant to the Engagement Agreement and Candlewood instead shall present to the Court reasonably detailed descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services, the individuals who provided professional services on behalf of the Debtors, the section 363 sales that have been closed as of the date of the fee application, and the fees and expenses paid to Candlewood pursuant to such Sales.

6.     The Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated: _____, 2009
        Wilmington, Delaware

_____
Honorable Christopher S. Sontchi
United States Bankruptcy Judge

{00001556.2 }
US_ACTIVE-102425750.5-AMTONTI