# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------
```
)
In re:                                              ) Case No.09-13395 (CSS)
                                                    )
PTC ALLIANCE CORP., et al.,                         ) Chapter 11
                                                    )
                              Debtors.[1]           ) Jointly Administered
                                                    )
```
------------------------------------------------------
```

## FINAL ORDER (I) AUTHORIZING (A) THE DEBTORS TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364; (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] dated November 10, 2009 [Docket No. 235] of PTC

Alliance Corp. ("**PTC**"), PTC Tubular Products LLC, Mid-West Mfg. Co., Alliance Tubular

Products Co., Enduro Industries, Inc., PACD Acquisition LLC and PT/VW Corporation

("**PTVW**," and collectively, the "**Debtors**"), in the above-captioned cases (the "**Cases**") seeking,

pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and

364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"),

Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are: PTC Alliance Corp. (2395), with a principal executive office located at 6051 Wallace Road Ext., Suite 200, Wexford, PA 15090; Alliance Tubular Products Co. (7185), with a principal executive office located at 640 Keystone Street, Alliance, OH 44601; PACD Acquisition (3405), with a principal executive office located at 4400 west 3rd, Beaver Falls, PA 15010; Enduro Industries, Inc. (4669), with a principal executive office located at 2001 Orchard Avenue, Hannibal, MO 64031; PTC Tubular Products, LLC (9342), with a principal executive office located at 23041 E 800 North Road, Fairbury, IL 61739-8824; Mid-West Manufacturing Company (0660), with a principal executive office located at 475 East 16th Street, Chicago Heights, IL 60411; and PT VW (9385), with a principal executive office located at 6051 Wallace Road Ext., Suite 200, Wexford, PA 15090.

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

**Rules**") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), this Court's authorization:

(a)     for the Debtors to obtain senior secured postpetition financing pursuant to that certain Super-Priority Debtor-in-Possession Credit Agreement dated October 2, 2009 (as amended from time to time, the "**DIP Facility**", collectively with all ancillary documents at any time executed in connection therewith (including, without limitation, any loan agreement, notes, guaranties, security agreements, pledge agreements, control agreements, mortgages or other agreements or instruments executed by one or more Debtors in connection with the DIP Facility to evidence or govern the terms thereof), the "**DIP Documents**") substantially in the form attached to the Debtors' Financing Motion [Docket No. 9] as Exhibit A, up to the aggregate principal amount of $5,000,000 (the actual available principal amount at any time being subject to the conditions set forth in the DIP Documents) from Black Diamond Commercial Finance, LLC ("**BDCF**"), acting as administrative agent (in such capacity, the "**Agent**"), for itself and a syndicate of financial institutions (together with BDCF, the "**DIP Lenders**"), with such DIP Facility:

(i)     having priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, except for the Adequate Protection Obligations (defined below) and the Carve Out (as defined below);

(ii)     being secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtors including, but not limited to, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, provided, however, that such liens are subordinate to the Adequate Protection Liens (defined in paragraph 14(a) below);

(iii)     being secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected junior security interests in and liens upon all prepetition and postpetition property of the Debtors that is subject to valid and perfected liens in existence at the time of the commencement of the Cases or to valid liens in existence at the time of such commencement and perfected thereafter as permitted by Section 546(b) of the Bankruptcy Code (in each case other than liens that secure the Prepetition Secured Obligations (as defined below)); and

(iv)     being secured, pursuant to Section 364(d)(1) of the Bankruptcy Code, by perfected first priority senior priming liens on (x) all present and after-acquired property of the Debtors that is subject to a lien on or after the Petition Date on the

Debtors' Current Assets[3] to secure the Debtors' indebtedness under or in connection with the Prepetition ABL Credit Agreement and (y) present and after-acquired property of the Debtors that is presently subject to a lien that is junior to the liens on the Debtors' Current Assets that secure the Debtors' indebtedness under or in connection with the Prepetition ABL Credit Agreement, which first priority priming liens shall also be senior in all respects to all of such existing liens on the Debtors' Current Assets under or in connection with the Prepetition ABL Credit Agreement, and to any liens granted after the commencement of the Cases to provide adequate protection in respect thereof, subject only to the Carve Out (defined below);

(b)      for the Debtors to use the Cash Collateral pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and other collateral in which the Prepetition Secured Parties (as defined below) have an interest (together with the Cash Collateral, the "**Prepetition Collateral**") and provide adequate protection with respect to any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral resulting from the use of the Cash Collateral and the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) or imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)      to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on this Motion for this Court to consider entry of an interim order annexed to the Motion (as entered, the "**Interim Order**") (i) authorizing the Debtors, on an interim basis, to forthwith borrow from the DIP Facility up to the aggregate amount of $3,000,000 from the DIP Lenders under the DIP Facility, (ii) authorizing the use by the Debtors of cash collateral, and (iii) granting the adequate protection hereinafter described;

(d)      to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order (the "**Final Order**") authorizing the balance of the DIP Facility on a final basis, as set forth in this Motion and the DIP Facility attached to this Motion; and

(e)      the granting of certain related relief.

---

[3]      For purposes of this Order, all of the following shall constitute "Current Assets" of the Debtors: receivables, inventory, Documents (as defined in the Uniform Commercial Code) evidencing inventory, Deposit Accounts (as defined in the Uniform Commercial Code), cash, Supporting Obligations (as defined in the Uniform Commercial Code) in respect of any of the foregoing property, and all proceeds of any of the foregoing; all other assets and properties of any kind whatsoever of the Debtors shall constitute "Fixed Assets" For the avoidance of doubt, Current Assets do not include chapter 5 avoidance actions under the Bankruptcy Code or the proceeds thereof or the Debtors' interests in foreign subsidiaries/affiliates to the extent they do not constitute Prepetition Collateral.

An interim hearing having been held by this Court on November 12, 2009 and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

The Interim Order having been entered on November 12, 2009, and the notice requirements set forth in the Interim Order having been complied with and the Final Hearing having been held by this Court on December 3, 2009; and

Upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED. BASED ON THE RECORD BEFORE THE COURT AT THE INTERIM HEARING, that:

1.      *Jurisdiction.* This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice.* Notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing was served by the Debtors on their consolidated twenty largest unsecured creditors, the Prepetition Secured Parties (as defined below), the landlords, the holders of existing liens, other affected parties, and the United States Trustee for the District of Delaware (the "U.S. Trustee"), and with respect to notice of the Final Hearing the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these cases (the "Committee"). Under the circumstances, such notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2.

3.      *Objections.* All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4. *Debtors' Stipulations.* Without prejudice to the rights of any other party, including without limitation the Committee, (but subject to the limitations thereon contained in paragraph 19 below), the Debtors admit, stipulate and agree that:

(a) as of the Petition Date, the Debtors were indebted and liable to:

(i) the Prepetition ABL Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $41,279,000 in respect of loans made by Prepetition ABL Lenders pursuant to, and in accordance with the terms of, the Debtors' indebtedness under or in connection with that certain Credit Agreement, dated as of July 25, 2006 (as the same may be amended, supplemented or otherwise modified from time to time, the "**Prepetition ABL Credit Agreement**"), among the Debtors, as borrowers, Black Diamond Commercial Finance, LLC, as administrative agent, and certain banks and financial institutions party thereto as lenders (the "**Prepetition ABL Lenders**"), plus, in each case, interest thereon and other obligations incurred in connection therewith as provided in the Prepetition ABL Credit Agreement (the "**Prepetition ABL Credit Agreement Obligations**"), (x) the Prepetition ABL Credit Agreement Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no portion of the Prepetition ABL Credit Agreement Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (z) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition ABL Lenders and their affiliates, agents, officers, directors, employees and attorneys with respect to the Prepetition ABL Credit Agreement Obligations;

(ii)     the Prepetition Term Loan (A) Lenders (as defined below), without defense, counterclaim or offset of any kind, in the aggregate principal amount of $76,524,689 in respect of the extensions of credit provided for pursuant to, and in accordance with the terms of, that certain Term Loan (A) Agreement, dated as of July 25, 2006 (as the same may be amended, supplemented or otherwise modified from time to time, the "**Prepetition Term Loan (A) Agreement**"), among the Debtors (other than PTVW), as borrowers, The Bank of New York, as administrative agent, and certain institutions from time to time party thereto as lenders (the "**Prepetition Term Loan (A) Lenders**"), plus, in each case, interest thereon and other obligations incurred in connection therewith as provided in the Prepetition Term Loan (A) Agreement (collectively, the "**Prepetition Term Loan (A) Obligations**"), (x) the Prepetition Term Loan (A) Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no portion of the Prepetition Term Loan (A) Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (z) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against Prepetition Term Loan (A) Lenders and their affiliates, agents, officers, directors, employees and attorneys with respect to the Prepetition Term Loan (A) Obligations; and

(iii)     the Prepetition Term Loan (B) Lenders (as defined below), without defense, counterclaim or offset of any kind, in the aggregate principal amount of $63,065,194.47 in respect of the extensions of credit provided for pursuant to, and in accordance with the terms of, that certain Term Loan (B) Agreement, dated as of July 25, 2006 (as the same may be

amended, supplemented or otherwise modified from time to time, the "**Prepetition Term Loan (B) Agreement**"), among the Debtors (other than PTVW), as borrowers, The Bank of New York, as administrative agent, and certain institutions from time to time party thereto as lenders (the "**Prepetition Term Loan (B) Lenders**" and together with the Prepetition ABL Lenders and the Prepetition Term Loan (A) Lenders, the "**Prepetition Secured Parties**"), plus, in each case, interest thereon and other obligations incurred in connection therewith as provided in the Prepetition Term Loan (B) Agreement (collectively, the "**Prepetition Term Loan (B) Obligations**" and together with the Prepetition ABL Credit Agreement Obligations and the Prepetition Term Loan (A) Obligations, the "**Prepetition Secured Obligations**"), (x) the Prepetition Term Loan (B) Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no portion of the Prepetition Term Loan (B) Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (z) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against Prepetition Term Loan (B) Lenders and their affiliates, agents, officers, directors, employees and attorneys with respect to the Prepetition Term Loan (B) Obligations;

(b)     the liens and security interests granted to the Prepetition Secured Parties pursuant to and in connection with the Prepetition Secured Obligations (including, without limitation, all security agreements, pledge agreements, deeds of trust and other security documents executed by the Debtors in favor of the Prepetition Secured Parties) are (i) valid, binding, perfected, enforceable, liens and security interests in the property and of

the priority described in the Prepetition ABL Credit Agreement, the Prepetition Term Loan (A) Agreement and the Prepetition Term Loan (B) Agreement (collectively, the "**Prepetition Secured Credit Documents**"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (x) the DIP Liens (as defined below), (y) the Carve Out (as defined below) and (z) valid, perfected and unavoidable liens permitted under the Prepetition Secured Credit Documents to the extent such permitted liens are senior to or *pari passu* with the liens of the Prepetition Secured Parties on the Prepetition Collateral (together with the liens granted to the Prepetition Secured Parties under the Prepetition Secured Credit Documents, the "**Prepetition Liens**"); and

(c)     the aggregate value of the Prepetition Collateral securing the Prepetition Secured Obligations exceeds the aggregate amount of the Prepetition Secured Obligations.

5.     *Findings Regarding the DIP Facility.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Debtors need to obtain the DIP Facility on a permanent basis and continue use the Prepetition Collateral, including the Cash Collateral, in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, to pay interest, fees and expenses in accordance with this Order, to pay amounts approved by other Order of this Court, to provide working capital for the Debtors and to fund an orderly sale process. The Debtors' use of the Prepetition Collateral in general and access to the

proceeds of the DIP Facility and the Cash Collateral specifically, is necessary in order to insure that the Debtors have sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Facility and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or unsecured credit with the enhanced priority afforded by section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the DIP Facility.

(d)     The terms of the DIP Facility and the use of Cash Collateral are fair and reasonable under the circumstances of  these Cases, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length between the Debtors, the DIP Lenders and the Prepetition Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all loans made to the Debtors pursuant to the DIP Facility (together with any other obligation arising under this Order of the DIP Facility, collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lenders in good faith, and the Prepetition Secured

Parties' consent to the Debtors' use of Cash Collateral shall be deemed to have been in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Order and the DIP Facility is therefore in the best interest of the Debtors' estates.

6.     *Authorization of the DIP Facility.*

(a)     The DIP Facility is hereby approved as set forth in this Order and the Debtors are hereby authorized to borrow money pursuant to the DIP Facility and this Order, up to an aggregate principal or face amount of $5,000,000, subject to satisfaction or waiver of any conditions precedent set forth in the DIP Documents, which shall be used for all purposes permitted under the DIP Facility, including, without limitation, to pay interest, fees and expenses in accordance with this Order, to pay amounts approved by other Order of this Court, to provide working capital for the Debtors, to pay amounts owing under the Carve-Out and to fund an orderly sale process of the Debtors' businesses, in each case in accordance with the Approved Budget (as defined in the DIP Facility, the most recent of which is attached as Exhibit E to the Motion). The $1 million drawn by the Debtors pursuant to the First Interim DIP Order (the "**Existing Draw**") shall be deemed to be drawn under the DIP Facility. The Debtors shall provide written notice to counsel for CIT and

GCAT (defined herein) of all loans made under the DIP Facility within one day of the funding such loan(s).

(b)     In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, pledge agreements, mortgages, control agreements and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(i)     the execution, delivery and performance of the DIP Documents and any exhibits attached thereto, including, without limitation, the DIP Facility;

(ii)     the execution, delivery and performance of one or more amendments to the DIP Facility, including without limitation an amendment to effectuate the terms of this Order, in each case in such form as the Debtors and the DIP Lenders may agree (it being understood that, *inter alia*, no further approval of the Court shall be required for non-material amendments to the DIP Facility that, do not shorten the maturity of the extensions of credit thereunder or increase the commitments, or the rate of interest payable thereunder; provided, however, that notice of any proposed non-material amendment to the DIP Facility shall be filed with this Court and served electronically upon counsel to the Prepetition Secured Lenders, counsel to the Committee and the U.S. Trustee; provided further, that the aforementioned parties shall have three (3) business days from the date of electronic service to object to any such non-material amendment);

(iii)    the non-refundable payment to the DIP Lenders, as the case may be, of the fees referred to in the DIP Facility (and in any separate letter agreements between them in connection with the DIP Facility) and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents incident to the relief that has been authorized by this Court.

(c)    The DIP Facility constitutes the valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms.  No obligation, payment, transfer or grant of security of, by and/or between the DIP Lenders and/or the Debtors under the DIP Facility or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and

over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein.

(b)    Notwithstanding the foregoing, the Superpriority Claims of the DIP Lenders may not be asserted in or against (i) proceeds of chapter 5 avoidance actions, or (ii) the proceeds of the Debtors' interests in foreign subsidiaries/affiliates that were not Prepetition Collateral, nor shall any lien, levy or attachment relating to the Superpriority Claims be asserted in or attach to chapter 5 avoidance actions or the Debtors' interests in foreign subsidiaries/affiliates that were not Prepetition Collateral.

(c)    For purposes hereof, the "**Carve Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and (ii) after the occurrence and during the continuance of a Default or Unmatured Default (each as defined in the DIP Facility) an amount not exceeding $350,000 in the aggregate plus all unpaid professional fees and expenses allowed by this Court  (whether allowed prior to or after the occurrence of a Default or Unmatured Default) that were incurred prior to the occurrence of a Default or Unmatured Default up to the amount allocated for such fees in the Approved Budget through the date of such Default or Unmatured Default (in each case without application of any retainers held by such professionals), which amount may be used subject to the terms

of this Order, including, without limitation, paragraph 15 hereof, to pay any fees and expenses incurred by the Debtors' professionals and the Committee's professionals, in respect of (A) allowances of compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court to the Debtors' or any Committee's professionals and (B) the reimbursement of expenses allowed by the Bankruptcy Court incurred by Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members); *provided, however*, (x) that the dollar limitation in this clause 7(b)(ii) on fees and disbursements shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of a Default or Unmatured Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the Agent, any DIP Lender or their respective attorneys and agents under the DIP Facility or otherwise, and (y) that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above.

8.     *DIP Liens.*

As security for the DIP Obligations, effective and perfected upon the date of the original Interim DIP Order [Docket No. 64] and without the necessity of the execution, recordation or filing by the Debtors of security agreements, control agreements, pledge agreements, mortgages, financing statements or other similar documents, the following security interests and liens are hereby granted to the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence and during the continuance of an Default or Unmatured Default, to the payment of the Carve Out (all

such liens and security interests granted to the DIP Lenders, pursuant to this Order and the DIP Facility, the "**DIP Liens**"):

      (a)     <u>First Lien on Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (other than on Collateral of PTVW that is located in Germany and any Capital Stock of Wiederholt or any Foreign Subsidiary) (collectively, "**Unencumbered Property**"), including, without limitation, any unencumbered cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing, provided that "Unencumbered Property" shall not include causes of action against the Prepetition Secured Parties and/or any avoidance actions.

      (b)     <u>Liens Priming Prepetition Secured Parties' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition Current Assets of the Debtors, whether now existing or hereafter acquired, that is subject to the existing liens presently securing Debtors' obligations under the Prepetition ABL Credit Agreement (other than on Collateral of PTVW that is located in Germany and any Capital Stock of Wiederholt or any Foreign Subsidiary). Such security interests and

liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, adequate protection liens granted hereunder, but excluding Fixed Assets).

(c) <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interest in and liens upon all pre- and postpetition property of the Debtors (other than (i) the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Lenders will be as described in such clauses, and (ii) Collateral of PTVW that is located in Germany and any Capital Stock of Wiederholt or any Foreign Subsidiary), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Lenders are junior to such valid, perfected and unavoidable liens.

(d) <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and, subject to paragraph 19 of this Order, the Adequate Protection Liens (as defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any Debtor, or (ii) subordinated to or made

*pari passu* with any other lien or security interest under section 364 of the Bankruptcy Code or otherwise.

9.    *Protection of DIP Lenders' Rights.*

(a)    So long as there are any borrowings or other amounts outstanding, or the DIP Lenders have a lending commitment outstanding under the DIP Facility, each of the Prepetition Secured Parties shall take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to, as appropriate, the Prepetition Secured Obligations or this Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this Court, provided, however, that if the DIP Lenders take any action to foreclose upon or recover in connection with the liens granted in connection with the DIP Facility, the Prepetition Secured Parties may be permitted upon further order of this Court to take action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Secured Obligations or this Order.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lenders and the Prepetition Secured Parties to exercise, upon the occurrence of a Default and the giving of five (5) business days' written notice provided for in the DIP Facility and to the Committee, all rights and remedies under the DIP Facility; *provided, however*, an order granting relief from the automatic stay must first be obtained before the DIP Lenders may proceed to foreclose on any Collateral; *provided, further,* upon the occurrence of a Default the DIP Lenders' right to have a motion to modify the automatic stay vacated and modified shall be heard on an emergency basis at the earliest possible opportunity. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in

opposition thereto shall be whether, in fact, a Default has occurred and is continuing, and the Debtors hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict (i) the rights and remedies of the DIP Lenders set forth in this Order or the DIP Facility, or (ii) the Prepetition Secured Parties pursuant to the Prepetition Secured Obligations or this Order. In no event shall the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The DIP Lenders' or Prepetition Secured Parties' failure to seek relief or otherwise exercise their rights and remedies under the DIP Facility, the Prepetition Secured Obligations or this Order shall not constitute a waiver of the DIP Lenders' or Prepetition Secured Parties' rights hereunder, thereunder or otherwise.

10.     *Limitation on Charging Expenses Against Collateral.*

Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral, the Prepetition Collateral or the Prepetition Secured Parties' Replacement Collateral (as defined in paragraph 14(a) below), pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lenders or the Prepetition Secured Parties, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders or the Prepetition Secured Parties.

11.     *Payments Free and Clear.* Subject to the right of third parties to bring an action by the Challenge Deadline in paragraph 19 of this Order, any and all payments or proceeds remitted to the DIP Lenders or the Prepetition Secured Parties pursuant to the provisions of this

Order or any subsequent order of the Court shall be received free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

12.     *Interest on DIP Obligations.*  Interest on the DIP Obligations shall accrue at the rates and shall be paid at the times as provided in the DIP Facility.

13.     *Use of Cash Collateral.*  The Debtors are hereby authorized to use all Cash Collateral of the Prepetition Secured Parties, and the Prepetition Secured Parties are directed promptly to turn over to the Debtors all Cash Collateral received or held by them, *provided* that the Prepetition Secured Parties are granted adequate protection as hereinafter set forth.  The Debtors' right to use Cash Collateral under this Order shall terminate automatically on the Termination Date (as defined in the DIP Facility).  The Debtors shall make all disbursements from available Cash Collateral unless doing so would cause the amount of Cash Collateral available to the Debtors to be less than an amount not greater than $500,000; the Debtors shall borrow money pursuant to the DIP Facility for disbursements only to the extent they do not have Cash Collateral in excess of such amount to be maintained as cash on hand available to make such disbursements.

14.     *Adequate Protection.*  The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Secured Parties' respective Prepetition Collateral (subject to proof before the Court or as agreed to by the Prepetition Secured Parties, the Debtors and the Committee), including, without limitation, any such diminution resulting from the sale, lease or use by the

Debtors (or other decline in value) of the Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the **"Adequate Protection Obligations"**). As adequate protection, the Prepetition Secured Parties are hereby granted the following:

      (a)    <u>Adequate Protection Liens</u>. The Prepetition Secured Parties are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements or other agreements), solely to the extent of the diminution in value of the Collateral, a replacement security interest in and junior lien upon all the Collateral (the **"Adequate Protection Liens"**), of the same type and category in which they had Prepetition Liens (such collateral, the **"Replacement Collateral"**). For purposes of clarity, Adequate Protection Liens are not granted in (i) chapter 5 avoidance actions or the proceeds thereof, or (ii) the Debtors' interests in foreign subsidiaries/affiliates that were not Prepetition Collateral;

      (b)    <u>Section 507(b) Claim</u>. The Prepetition Secured Parties are hereby granted, subject to the payment of the Carve Out, and solely to the extent of the diminution in value of the Collateral (subject to proof before the Court or as agreed to by the Prepetition Secured Parties, the Debtors and the Committee), a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Lenders; *provided, however*, that the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the

Bankruptcy Code granted hereunder or under the Prepetition Secured Credit Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full;

(c)     Interest/Principal Payments.  The Prepetition ABL Lenders shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Prepetition Obligations at the respective non-default rates provided for in the Prepetition Secured Credit Documents, and all other accrued and unpaid fees and disbursements (including, but not limited to, agent's fees) owing to the Prepetition ABL Lenders under the Prepetition Secured Credit Documents through the date of this Order, and (ii) (x) in the case of Black Diamond International Funding, Ltd., on the first business day of each month, all accrued but unpaid interest on the Prepetition Secured Obligations, at the non-default contract rate applicable on the Petition Date under the Prepetition Secured Credit Documents, *provided* that, without prejudice to the rights of any other party to contest such assertion, (1) the Prepetition ABL Lenders reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Prepetition Secured Credit Documents, and for the payment of any other amounts provided for in the Prepetition Secured Credit Documents and (2) the right of any party (including the Committee) other than the Debtors to challenge the payment or additional interest or to seek to recharacterize the payments of interest and all other accrued and unpaid fees and disbursements (including, but not limited to, agent's fees) owing to the Prepetition ABL Lenders under the Prepetition Secured Credit Documents and incurred prior to the Petition Date as principal in the event that the Prepetition ABL Lenders are determined to be undersecured in connection with an action filed by the Challenge Deadline

are preserved; and (y) in the case of each of the other Prepetition ABL Lenders (The CIT Group/Business Credit, Inc.; CIT Middle Market Loan Trust (jointly, "**CIT**"); and Grand Central Asset Trust, BDC Series ("**GCAT**")) within two Business Days after any draw under the DIP Facility on or after the date of this Order, a payment by the Debtors directly to such Prepetition ABL Lender in an amount equal to the percentage of each such draw under the DIP Facility that is equal to such Prepetition ABL Lender's percentage of the outstanding principal amount under the Prepetition ABL Facility as of the Petition Date[4] (the "Prepetition ABL Principal Payments"). All Prepetition ABL Lenders receiving Prepetition ABL Principal Payments shall apply all such payments against the principal owing to such lender under the Prepetition ABL Facility. The Prepetition ABL Lenders included in paragraph 14(c)(ii)(y), above, shall also each receive a Prepetition ABL Principal Payment with respect to the Existing Draw within three Business Days of entry of this Order. All Prepetition ABL Principal Payments shall be irrevocable for all purposes in these Cases and shall be made in accordance with wire transfer instructions provided to the Debtors by CIT and GCAT.

        (d)    <u>Fees and Expenses</u>. The Prepetition Secured Parties shall receive from the Debtors current cash payments of all fees and expenses payable to the Prepetition Secured Parties under the Prepetition Secured Credit Documents and to any Prepetition Secured Party entitled to be paid under the Prepetition Secured Credit Documents, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants for the Prepetition Secured Parties, provided however, that the

---

[4] As of the Petition Date, CIT held 34.22% and GCAT held 9.59% of the outstanding principal amount under the Prepetition ABL Facility.

Committee reserves the right to seek to recharacterize the payment of fees and expenses to the Prepetition Secured Parties as payments to be applied to principal in the event that the ABL Lenders are determined to be undersecured in connection with an action filed by the Challenge Deadline. The Prepetition Secured Parties shall deliver copies of all invoices payable under this section to counsel for the Debtors with copies to the U.S. Trustee and counsel for the Committee.

15.     *Priorities Among Prepetition Secured Parties.*  Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the Adequate Protection Obligations granted hereunder), such priorities and rights shall continue to be governed by the Prepetition Secured Credit Documents.

16.     *Reservation of Rights of Prepetition Secured Parties.*  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  However, the Prepetition Secured Parties may request further or different adequate protection or other relief, and the Debtors or any other party may contest any such request.  Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Secured Parties or the DIP Lenders including, without limitation, the rights of CIT and GCAT to (i) seek monthly payment of interest, fees and costs, and (ii) object to the *Motion Pursuant to 11 U.S.C. Sections 105(a), 363, 365 and Fed.R.Bankr.P. 2002, 6004,*

*6006 for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Substantially all of the Debtors' Assets; (B) Approving Bid Protections; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Permitting Credit Bidding Pursuant to Bankruptcy Code Section 363(k); (E) Establishing Certain Notice Procedures for Determining Cure amounts; (F) Approving Form and Manner of Notice of all Procedures, protections, schedules and Agreements; and (H)* [sic] *Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 24].

Notwithstanding anything contained herein or in the DIP Facility, the Prepetition Secured Parties do not consent to the priming of their respective liens on property of the Debtors except as specifically set forth in this Order, and reserve the right to object to any other attempt to prime their respective liens on property of the Debtors in these cases, including in connection with any alternatively proposed debtor in possession financing.

17. *Perfection of DIP Liens and Adequate Protection Liens.*

(a) Subject to the provisions of paragraph 9(a) above, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lenders or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests

granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of the DIP Lenders or the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

(c)     The Debtors shall execute and deliver to the DIP Lenders and the Prepetition Secured Parties all such agreements, security agreements, pledge agreements, control agreements, financing statements, mortgages, instruments and other documents as the DIP Lenders and the Prepetition Secured Parties may reasonably request that are not inconsistent with this Order to evidence, confirm, validate or perfect the DIP Liens and Adequate Protection Liens granted pursuant hereto.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in

such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or the Prepetition Secured Parties in accordance with the terms of the DIP Facility or this Order.

18.     *Preservation of Rights Granted Under the Order.*

(a)     Unless all DIP Obligations shall have been paid in full and the Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute a Default and a termination of the right to use Cash Collateral if the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Agent, or (ii) an order dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (y) the priming liens, security interests and replacement security interests granted to the Agent and, as applicable, the Prepetition Secured Parties pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the liens and security interests referred to in clause (y) above.

(b)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i)

the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lenders or the Prepetition Secured Parties, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Facility with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Lenders or the Prepetition Secured Parties prior to the actual receipt of written notice by the DIP Lenders or the Prepetition Secured Parties as of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the DIP Lenders and Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the Interim Order, this Order and pursuant to the DIP Facility with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(c)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of the Interim Order, this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to cases under chapter 7, dismissing any of the Cases (excepting the Superpriority Claims) or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations that are not addressed by the confirmation order.  The terms and

provisions of this Order and the DIP Documents shall continue in these Cases or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect in such cases until the DIP Obligations are indefeasibly paid in full.

19.    *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon the Debtors in all circumstances.  The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon all other parties in interest, including, without limitation, the Committee, unless (a) a party in interest (including, for avoidance of doubt, a successor chapter 7 trustee or chapter 11 trustee) has filed a motion seeking standing to file an adversary proceeding or contested matter or has filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, <u>inter alia</u>, in paragraph 20) by no later than the date that is the later of (i) December 11, 2009 or (ii) such later date (x) as has been agreed to, in writing, by the Prepetition Secured Parties in their sole discretion or (y) as has been ordered by the Court (the "**Challenge Deadline**") (1) challenging the validity, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens on the Prepetition Collateral or (2) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses that the Debtors' estates may have (collectively, "**Claims and Defenses**") against the Prepetition Secured Parties or their affiliates, representatives, attorneys or advisors in connection with matters related to the Prepetition Secured Credit Documents, the Prepetition Secured Obligations, or the Prepetition

Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such adversary proceeding or contested matter filed by the Challenge Deadline, *provided* that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline, (x) Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, avoidance or reduction, except by payment and (z) the Prepetition Secured Obligations, the Prepetition Liens on the Prepetition Collateral and the Prepetition Secured Parties shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for the Debtors). If any such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline, the stipulations and admissions contained in paragraph 4 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to

the Prepetition Liens or the Prepetition Secured Obligations. The Court shall hold an evidentiary hearing on any challenge brought pursuant to this paragraph 19 on December 15, 2009.

20.    *Waiver of Claims and Causes of Action Against the DIP Lenders.* Without prejudice to the rights of any other party, including the Committee, the Debtors have waived any and all claims and causes of action against the DIP Lenders, and their affiliates, directly related to the DIP Facility or the negotiation of the terms thereof.

21.    *Limitation on Use of DIP Facility Proceeds and Collateral.* The Debtors shall use the proceeds of the DIP Facility solely as provided in this Order and in the DIP Documents. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Prepetition Collateral, Replacement Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order, the DIP Facility or the Prepetition Secured Credit Documents, or the liens or claims granted under this Order, the DIP Facility or the Prepetition Secured Credit Documents, (b) assert any Claims and Defenses or causes of action against the DIP Lenders, the Prepetition Secured Parties or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lenders' or the Prepetition Secured Parties' assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility, the Prepetition Secured Credit Documents or this Order, (d) seek to modify any of the rights granted to the DIP Lenders or the Prepetition Secured Parties hereunder, under the DIP Facility or the Prepetition Secured Credit Documents, in each foregoing case without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court or (ii) in accordance with the terms of the DIP Facility.

The foregoing shall not limit the ability of the Committee to use the Carve Out to investigate matters referenced in paragraph 19 of this Order or relating to its objections (if any) to the DIP Facility or the proposed sale other than a challenge to the rights of the Prepetition Secured Parties to credit bid pursuant to Section 363(k) of the Bankruptcy Code.

22.     *Insurance.*  Pursuant to this Order, (i) the DIP Lenders shall be and shall be deemed to be, without any further action or notice, named as an additional insured on each insurance policy maintained by the Debtors which in any way relates to the Collateral, and (ii) the Prepetition Secured Parties, to the extent of their Adequate Protection Liens, shall be and shall be deemed to be, without any further action or notice, named as additional insureds on each insurance policy maintained by the Debtors which in any way relates to the Replacement Collateral.

23.     *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Facility, the provisions of this Order shall govern.

24.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Lenders, the Prepetition Secured Parties, any Committee appointed in these Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of any Debtor or with respect to the property of any of the Debtors' estates) and shall inure to the benefit of the DIP Lenders, the Prepetition Secured Parties and the Debtors and each of their respective successors and assigns;

*provided, however*, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of any Debtor.

25.     *Limitation of Liability.*  In determining to make any loan under the DIP Documents or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders any liability for any claims arising from the prepetition or postpetition activities by the Debtors and its affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of its business, or in connection with its restructuring efforts.

26.     *Right of Access and Information.*

(a)     The Debtors shall permit representatives, agents and/or employees of the DIP Lenders to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.  Copies of the Approved Budget and any reports or other documents delivered to the DIP Lenders pursuant to the DIP Documents or this Order shall also be provided to counsel for CIT/GCAT and counsel for the Committee.

(b)     Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lenders contained in this Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that a Default has occurred and is continuing under the DIP Documents, the DIP Lenders may, subject to any separate agreement by and between such landlord and the DIP Lenders, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the applicable Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Lenders shall only pay rent and additional rent obligations of the Debtors that first arise after the DIP Lenders' written notice referenced above and that are payable during the period of such occupancy by the DIP Lenders, calculated on a per diem basis.  Other than the payment obligation contained in this paragraph, the DIP Lenders shall not be required to perform any of the Debtors' obligations under any lease as a condition to the rights afforded to the DIP Lenders in this paragraph. Furthermore, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the liens of the DIP Lenders in such Collateral.

27. *Effectiveness*. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution thereof.

Dated: ~~November~~ 3/1, 2009
Wilmington, Delaware

_____
United States Bankruptcy Judge